### In The United States District Court
### for the District of Columbia

| | |
|---|---|
| **Jeffrey Stein**<br>4547 Grant Road, NW<br>Washington, DC 20016 | Case No. _____ |
| **Priscilla Fuller**<br>719 Bonnie Road, SE<br>Washington, DC 20002 | |
| **Rabindranauth Ramson**<br>3200 16th Street, NE<br>Washington, DC 20018-3812 | Complaint for Injunctive Relief and Damages for Violation of the Right to Financial Privacy Act, Unjust Enrichment, Negligent Bailment, Negligence and Violation of the District of Columbia Consumer Protection Act |
| on their own behalf, in a representative capacity on behalf of the members of the public of the District of Columbia, and on behalf of all other similarly situated Bank of America customers | **Punitive Damages, Attorney Fees and Jury Trial Requested** |
| *Plaintiffs*,<br>vs. | |
| **Bank of America Corporation**<br>101 South Tryon Street<br>Charlotte, NC 28202 | |
| **Bank of America, NA**<br>101 South Tryon Street<br>Charlotte, NC 28202 | |
| **FIA Card Services, NA**<br>1100 North King Street<br>Wilmington, DE 19801 | |
| **MBNA Technology, Inc.**<br>16001 Dallas Pkwy<br>Addison, TX 75001-3311 | |
| **BA Continuum India Pvt. Ltd.**<br>4th Floor, Logitech Park<br>Tower I, Phase II<br>Andheri Kurla Road<br>Sakinaka, Mumbai - 400 072<br>INDIA | |

**BA Continuum Private Limited**
Unit No. 501, 5th Floor
Wing A, Prism Towers
Mind Space, Malad (West)
Mumbai 400-064
INDIA

**BA Continuum Philippines, Inc.**
Bonifacio E-Services Building
31st corner 2nd Streets, Crescent Park
West; Bonifacio Global City
PHILIPPINES

**BA Continuum Costa Rica, Ltda.**
Calle Blancos, Parque Empresarial del Este,
Edificio B-4, Del Servicentro Calle Blancos
100 mts Norte, San Jose
COSTA RICA

**BA Continuum Mexico, SC**
Centro Corporativo Intermex
Periferico Sur #7999 - E
Tlaquepaque 45601
MEXICO
                    *Defendants*.

Come now Jeffrey Stein, Priscilla Fuller and Rabindranauth Ramson, in their

individual capacities, on behalf of the general public of the District of Columbia as

private attorneys general, and on behalf of all others similarly situated, to obtain

injunctive relief and damages for violations of the Right to Financial Privacy Act, 12

U.S.C. §3401 et seq., Unjust Enrichment, Negligent Bailment, Negligence, and violation

of the District of Columbia Consumer Protection Act, D.C. Code § 28-3901 *et seq*. by

Bank of America Corporation, Bank of America, NA, and FIA Card Services, Inc., BA

Continuum India Pvt. Ltd., BA Continuum Private Limited (India), BA Continuum

Philippines, Inc., BA Continuum Costa Rica, Ltda., BA Continuum Mexico, SC (collectively and hereinafter "Bank of America") consequent to Bank of America's electronic data transmissions to foreign nationals who reside overseas.

1.      For the purposes of this complaint and hereinafter, telephone communications and information contained in electronic transmissions, including but not limited to digitized financial records, will be referred to as "electronic data transmissions" or "EDT."

### PARTIES TO THE ACTION

2.      Jeffrey Stein is a resident of the District of Columbia.  Mr. Stein is a Bank of America customer and engages in financial transactions with and through Bank of America.

3.      Priscilla Fuller is a resident of the District of Columbia.  Ms. Fuller is a Bank of America customer and engages in a variety of transactions with and through Bank of America for her personal benefit and the benefit of her family.

4.      Rabindranauth Ramson is a resident of the District of Columbia.  Mr. Ramson is a Bank of America customer and engages in a variety of transactions with and through through Bank of America, some of these transactions are for commercial purposes; other transactions are primarily for his personal benefit and the benefit of her family.

5.      Mr. Stein, Ms. Fuller, and Mr. Ramson bring this complaint in four distinct personae.

        5.1.    First, Mr. Stein, Ms. Fuller, and Mr. Ramson bring this action in their

3

individual capacities, as Bank of America customers.

5.2.    Second, Mr. Stein, Ms. Fuller, and Mr. Ramson bring this action as a "private attorneys general" on behalf of the general public of the District of Columbia to enforce the District of Columbia Consumer Protection Act ("DCCPA").  In this *parens patriae* capacity, and as a stand-in for the actual attorney general, Mr. Stein, Ms. Fuller, and Mr. Ramson rise above their personal interests for the protection of all residents of the District of Columbia.  In rising as a private attorney general, Mr. Stein, Ms. Fuller, and Mr. Ramson assert the District of Columbia's interest in protecting the physical and economic well-being of its citizens in general.  In bringing this claim, as deputized through legislation voted upon by the District of Columbia City Council and approved by the Mayor of the District of Columbia (with the approval of the United States Congress and the President of the United States), Mr. Stein, Ms. Fuller, and Mr. Ramson vindicate the District of Columbia Government's substantial interest in assuring the residents of the District of Columbia that the DCCPA will protect them from deceptive trade practices employed by those such as Bank of America while operating in and through the District of Columbia.  Under the DCCPA, Mr. Stein, Ms. Fuller, and Mr. Ramson are empowered to obtain relief for individuals who have been subject to Bank of America's conduct.  Mr. Stein, Ms. Fuller, and Mr. Ramson believe that a thorough examination of Bank of America's records will reveal sufficient information to identify the individuals to whom statutory penalties are owed.  Where such identifications are made, Bank of America will be required to pay the statutory damages along with *quantum meruit* attorney fees to compensate such individual members of the public.

4

5.3.    Third, Mr. Stein, Ms. Fuller, and Mr. Ramson bring this action on behalf of all similarly situated Bank of America customers residing in or having sufficient contacts with the District of Columbia.  Specifically, Mr. Stein, Ms. Fuller, and Mr. Ramson seek the certification of a class that meets the following description:  "All Bank of America customers residing in, or with sufficient contacts with the District of Columbia to have protection under the District of Columbia Consumer Protection Act whose EDT have been sent by Bank of America U.S. to foreign national personnel residing overseas."  This District of Columbia-only class, "DC Class Plaintiffs" is intended to complement to the private attorney general action brought by plaintiffs. Specifically, there might be circumstances wherein Bank of America's transfer of electronic data cannot be traced to particular residents of the District of Columbia individuals or where individuals, though affirmatively identified, cannot be located for the purpose of providing them with their individual relief.  Where it would be unjust for Bank of America to avoid paying statutory damages merely because of the inability to reach certain individuals, the DC Class Plaintiffs class is formed to create a residual common fund for the payment of damages on a class-wide basis.  In addition, DC Class Plaintiffs seek class-wide relief, under DC law, for unjust enrichment, negligent bailment, and negligence.

5.4.    Fourth, Mr. Stein, Ms. Fuller, and Mr. Ramson bring this action under the federal Right to Financial Privacy Act on behalf of all similarly situated Bank of America customers throughout the United States.  Mr. Stein, Ms. Fuller, and Mr. Ramson seek the certification of a class that meets the following description:  "All Bank

of America customers residing in the United States whose financial records have been sent by Bank of America U.S. to foreign national personnel residing overseas." Hereinafter, Mr. Stein, Ms. Fuller, and Mr. Ramson and members of the aforementioned class will be referred to as "National Plaintiffs."

6.      Plaintiffs are "customers" under the Right to Financial Privacy Act, 12 U.S.C. §3401 *et seq.*

7.      DC Class Plaintiffs are "consumers" under the District of Columbia Consumer Protection Act.

8.      Bank of America Corporation is a Delaware incorporated bank holding company located in Charlotte, NC.

9.      Bank of America, N.A., is a national banking association with its principal place of business in Charlotte, North Carolina.

10.     FIA Card Services, Inc. is a Delaware located subsidiary of Bank of America Corporation engaged in the business of credit card processing.

11.     MBNA Technology, Inc., is wholly owned by Bank of America Corporation.  It is registered in Delaware, does business in Addison, TX, and is primarily engaged in data processing on behalf of Bank of America.

12.     Bank of America Corporation; Bank of America, NA; and FIA Card Services, Inc., and MBNA Technology, Inc. are referred to as "Bank of America U.S."

13.     BA Continuum India Pvt. Ltd. ("BACI") is a non-bank subsidiary of Bank of America located in Mumbai, India.

14.     On information and belief, BACI is owned and/or managed by foreign nationals

who reside overseas.

15.     On information and belief, BACI personnel are, for the most part, foreign nationals who reside overseas.

16.     On information and belief, BACI is not a U.S. Person under the Foreign Intelligence Surveillance Act.

17.     On information and belief, Bank of America U.S. sends Plaintiffs' EDT to BACI.

18.     BA Continuum Private Limited ("BACPL") is a non-bank subsidiary of Bank of America located in Mumbai, India.

19.     On information and belief, BACPL is owned and/or managed by foreign nationals who reside overseas.

20.     On information and belief, BACLP personnel are, for the most part, foreign nationals who reside overseas.

21.     On information and belief, BACPL is not a U.S. person under the Foreign Intelligence Surveillance Act.

22.     On information and belief, Bank of America U.S. sends Plaintiffs' EDT to BACPL.

23.     BA Continuum Philippines, Inc. ("BACP") is a non-bank subsidiary of Bank of America located in Taguig, Philippines.

24.     On information and belief, BACP is owned and/or managed by foreign nationals who reside overseas.

25.     On information and belief, BACP personnel are, for the most part, foreign nationals who reside overseas.

26.     On information and belief, BACP is not a U.S. person under the Foreign

Intelligence Surveillance Act.

27.     On information and belief, Bank of America U.S. sends Plaintiffs' EDT to BACP.

28.     BA Continuum Costa Rica, Ltda. ("BACCR") is a non-bank subsidiary of Bank of America located San Jose, Costa Rica.

29.     On information and belief, BACCR is owned and/or managed by foreign nationals who reside overseas.

30.     On information and belief, BACCR personnel are, for the most part, foreign nationals who reside overseas.

31.     On information and belief, BACCR is not a U.S. person under the Foreign Intelligence Surveillance Act.

32.     On information and belief, Bank of America U.S. sends Plaintiffs' EDT to BACCR.

33.     BA Continuum Mexico, SC ("BACM") is a non-bank subsidiary of Bank of America located in Tlaquepaque, Mexico.

34.     On information and belief, BACM is owned and/or managed by foreign nationals who reside overseas.

35.     On information and belief, BACM personnel are, for the most part, foreign nationals who reside overseas.

36.     On information and belief, BACM is not a U.S. person under the Foreign Intelligence Surveillance Act.

37.     On information and belief, Bank of America U.S. sends Plaintiffs' EDT to BACM.

38.     BACI, BACPL, BACP, BACCR, BACM, and other foreign-owned and/or

managed, overseas located entities are hereinafter referred to as "Bank of America Overseas."

39.     Bank of America sends EDT to Bank of America Overseas and independent call/data centers so that such overseas personnel can service Plaintiffs inquiries and questions.

<u>J<small>URISDICTION AND</small> V<small>ENUE</small></u>

40.     Personal jurisdiction over Bank of America U.S. is proper pursuant to DC Code §13-423 (1) as Bank of America U.S. transacts business in the District of Columbia and under DC Code §13-423 (2) as Bank of America U.S. supplies services in the District of Columbia.  Personal jurisdiction over Bank of America Overseas is proper under DC Code §13-423 (4) because these companies, through Bank of America U.S., regularly does business and engages a regular course of business in the District of Columbia and have caused injury in the District of Columbia by processing telecommunications and electronic financial records of District of Columbia residents and therefore causing loss of Constitutional and statutory rights against the intrusion of the Government into Plaintiffs EDT.

41.     Bank of America is also subject to the jurisdiction of the District of Columbia has it has engaged in practices prohibited by the District of Columbia Consumer Protection Act.

42.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 as Plaintiffs' cause of action arises under the federal Right to Financial Privacy Act, 12 U.S.C. §3401 *et seq.*

43.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1332 (d) as the matter in controversy has been brought as a class action and the amount in controversy exceeds the sum or value of $5,000,000.00.

43.1.     With respect to the cause of action under the Right to Financial Privacy Act, the National Plaintiffs believe that millions of National Plaintiffs' EDT have been sent by Bank of America U.S. to foreign nationals residing overseas.  Under the Right to Financial Privacy Act, each of the National Plaintiffs is entitled to $100.00 for each such violation.  The aggregation of these claims far exceeds the jurisdictional threshold of 28 U.S.C. §1332 (d).

43.2.     National Plaintiffs also bring class wide allegations of Unjust Enrichment, Negligent Bailment, and Negligence calling for the creation of a common fund from which absent class members can make claim.  Accordingly, the common law claims can be aggregated for purposes of the Class Action Fairness Act.  Given the millions of Plaintiffs who fit the class description, Mr. Stein, Ms. Fuller and Ms. Ramson believe that there exists far in excess of $5 million in damages, thus meeting the jurisdictional requirements of the Class Action Fairness Act.

43.3.     With respect to the District of Columbia Consumer Protection Act, DC Class Plaintiffs believe that there have been tens of thousands of violations of the DCCPA.  Under the District of Columbia Consumer Protection Act, DC Class Plaintiffs are entitled to at least $1,500.00 in damages for each violation.  As Mr. Stein, Ms. Fuller, and Mr. Ramson bring class-wide claims under the DCCPA, these claims can be aggregated per 28 U.S.C. §1332 (d).

44.     Venue lies with the Superior Court as Mr. Stein, Ms. Fuller, and Mr. Ramson

reside in the District of Columbia.  As Bank of America regularly does and solicits

business in the District of Columbia, the District of Columbia is a convenient form for it.

COMMON FACTUAL ALLEGATIONS

45.     Plaintiffs are in privity of contract with Bank of America.

46.     Through various contractual relationships with Plaintiffs, Bank of America

agrees to provide various financial services to Plaintiffs in exchange for fees, interest,

and other charges that allow Bank of America to earn a profit.

47.     Plaintiffs entrust their EDT to Bank of America.

48.     Bank of America collects and stores EDT.

49.     Plaintiffs have a reasonable expectation that their EDT will be safeguarded

against disclosure to the United States or other governments.

50.     In the past, Bank of America relied upon a network of customer service call/data

centers in the United States (hereinafter "U.S.-based call/data centers").  These U.S.-

based call/data centers were designed to provide Bank of America's customers with

access to Bank of America personnel so such customers could fully utilize the financial

services provided by Bank of America. In order to access these services, Bank of

America customers were directed to dial ten-digit, U.S.-exchange, "domestic," often-

times toll-free telephone numbers ("U.S. telephone numbers").

51.     In order for Bank of America to service Plaintiffs' requests made via U.S.

telephone numbers, Bank of America created an information network capable of

directing Plaintiffs' spending, consumption, and financial records to Bank of America

11

personnel so that such personnel could have access to the call customer's records.

52.     Advances in communications technology have made it possible for Bank of America to expand what was once an information network of U.S.-based call/data centers to an information network of foreign-based call/data centers located overseas. Some of these call/data centers are operated or maintained by Bank of America Overseas.

53.     Advances in communications technology have made it possible for Bank of America to expand what was once an information network of U.S.-based call/data centers to an information network of foreign-based call/data centers located overseas. Some of these call/data centers are independently operated and provide services to Bank of America under contract yet are not subsidiaries of Bank of America.  These call/data centers are staffed, for the most part, by foreign nationals.

54.     Bank of America has established Bank of America Overseas and has entered into contractual relationships with independent, non-subsidiary call/data centers in order to increase its profits as, generally speaking, the cost of compensating foreign national personnel who reside overseas is less than compensating U.S.-based personnel.

55.     Bank of America has established a seamless customer experience such that Plaintiffs who communicate with Bank of America by dialing U.S. telephone numbers are not affirmatively notified that their EDT have been transferred to a foreign national residing overseas.

56.     Bank of America does not routinely direct Plaintiffs to dial "011" to reach the international phone exchange, or dial the country, or city codes of any foreign telephone

in order to reach its bank personnel.

57.     As Plaintiffs have not voluntarily dialed an international exchange, a country code, or a city code of a foreign locale, Plaintiffs have not purposefully availed themselves of non-U.S. communications or services provided by foreign nationals who reside overseas.

58.     Foreign nationals residing overseas have no rights under the Fourth Amendment to the United States Constitution.

59.     The foreign national personnel at Bank of America Overseas and at independent call/data centers have no rights under the Fourth Amendment to the United States Constitution.

60.     Foreign nationals residing overseas are not protected by the laws of the United States.

61.     The foreign national personnel at Bank of America Overseas and at independent call/data centers are not protected by the laws of the United States.

62.     Where the counterparty of an electronic transmission is a foreign national residing overseas, EDT received by and sent from that foreign national are not protected against U.S. Government intrusion by the Fourth Amendment to the United States Constitution or the laws of the United States.

63.     Since neither the Fourth Amendment to the United States Constitution or the laws of the United States safeguard EDT received by or sent from foreign national residing overseas, the United States Government may intercept such EDT without regard to constraints imposed by the Fourth Amendment to the United States

Constitution, or the constraints imposed by the laws of the United States.

64.    So long as the United States Government does not specifically "target" an U.S. person with is surveillance apparati, the United States Government is not constrained by the Foreign Intelligence Surveillance Act ("FISA") in harvesting EDT received by or sent from foreign nationals residing overseas.

65.    On information and belief, the United States maintains a global electronic signals interception system that, each day, collects billions of telecommunications and electronic data (including the above-described EDT) that are received by and sent from foreign nationals residing overseas.

66.    On information and belief, the United States Government seizes such electronic intercepts.

67.    On information and belief, the United States Government searches such electronic intercepts.

68.    On information and belief, substantially all EDT received by or sent from the foreign national staff of Bank of America Overseas and other overseas call/data centers are seized by the United States Government, by and through such entities as the National Security Agency.

69.    On information and belief, all EDT received by or sent from the foreign national staff of Bank of America Overseas and other overseas call/data center are searched by the United States Government.

70.    To the extent such EDT are not actually searched by the U.S. Government, they are at risk of being searched because the Constitutional and statutory prohibitions that

would otherwise safeguard such transmissions to U.S.-based call/data centers are forfeited by Bank of America's routing of the transmissions to Bank of America Overseas and other call/data centers.

71.     On information and belief, the United Kingdom, Canada, New Zealand, Australia, the People's Republic of China, the Russian Federation, the State of Israel, the Republic of India, Japan, the Islamic Republic of Iran, the Federal Republic of Germany, and France engage in electronic surveillance through which EDT are seized and searched.

72.     On information and belief, the United Kingdom, Canada, New Zealand, and Australia regularly share with the U.S. Government EDT that those governments have seized and the U.S. Government shares with those governments EDT it has seized.

73.     On information and belief, the EDT that has been transferred between and among the United States, the United Kingdom, Canada, New Zealand, and Australia.

74.     Though the extent to which EDT seized by Israel, India, Germany, and France is shared with the United States Government is not publicly known, there exist no legal impediment to the United States Government purchasing or otherwise obtaining EDT seized by such foreign governments.

75.     Were Bank of America to route Plaintiffs' EDT to call/data centers located within the United States, the transfer of EDT back and forth between Plaintiffs and Bank of America would not compromise Plaintiffs' Constitutional rights.

76.     By routing Plaintiffs' EDT to foreign national personnel residing overseas, Bank of America affects a forfeiture of the Constitutional and statutory rights that constrain

the surveillance by the United States Government.

77.     At no time does Bank of America provide notice to Plaintiffs who communicate

with Bank of America by dialing a U.S. telephone number that Bank of America U.S.'s

routing of such telecommunications and attendant EDT to Bank of America Overseas

and to independent call/data centers located overseas will affect a forfeiture of

Plaintiffs' Constitutional and statutory rights against Government surveillance of their

EDT.

78.     At no time does Bank of America provide Plaintiffs with control of where

Plaintiffs' EDT are routed.

79.     At no time does Bank of America obtain from Plaintiffs consent to the forfeiture

of Fourth Amendment and statutory rights safeguarding EDT from disclosure to the

United States or foreign governments.

80.     At no time does Bank of America obtain from DC Class Plaintiffs consent to the

forfeiture of their Constitutional and statutory protection against Government intrusion

into their EDT.

**COUNT 1**
**Violations of the Right to Financial Privacy Act**
Violation of 12 U.S.C. § 3403(a)
By National Plaintiffs against All Defendants

81.     National Plaintiffs incorporate the allegations of Paragraph 1 through 79 into the

allegations of Count 1.

82.     Bank of America sends EDT, which includes financial records, to Bank of

America Overseas and other foreign nationals residing overseas where such financial

records are not protected by the Fourth Amendment and are not covered by other protections of U.S. law.

83.     Electronic surveillance of foreign nationals who reside overseas by such government entities such as NSA is pervasive partially because such activities are not constrained by U.S. law.

84.     National Plaintiffs' financial records are subject to surveillance by foreign governments because foreign governments are not constrained by U.S. law.

85.     Once a foreign government has seized National Plaintiffs' financial records, nothing constrains the United States Government from purchasing or otherwise obtaining National Plaintiffs' financial records from foreign governments.

86.     Electronic surveillance of foreign nationals residing overseas includes electronic signals received by foreign nationals overseas, and electronic signals sent by foreign nationals overseas.

87.     By routing financial records to and from foreign nationals residing overseas, where U.S. electronic surveillance is pervasive and unconstrained by the U.S. Constitution, Bank of America provides access to financial records that it would not have were such financial records transferred within the United States.

88.     By routing financial records to foreign nationals overseas, *e.g.* Bank of America Overseas and other independent, foreign-national staffed overseas call/data centers, Bank of America provides the U.S. Government access to such financial records.

89.     Providing the Government access to Plaintiffs' financial records violates 12 U.S.C. § 3403(a) which provides "No financial institution, or officer, employees, or agent

of a financial institution, may provide to any Government authority access to or copies

of, or the information contained in, the financial records of any customer except in

accordance with the provisions of this chapter."

90.     Bank of America violates the RFPA by

90.1.     providing the United States Government access to financial records when

such financial records is transmitted to locales where the U.S. Government is

unconstrained by U.S. law;

90.2.     sending such financial records to locale where it can be access by foreign

governments for their own purposes;  and

90.3.     providing financial records to foreign governments that are unconstrained

in their ability to transfer such financial records to the U.S. Government.

91.     Bank of America has not obtained from National Plaintiffs the authorizations

required by 12 U.S.C. § 3404.

92.     WHEREFORE, Plaintiffs pray that the Court will:

92.1.     order Bank of America to disclose the records necessary to determine the

total number of times that Bank of America transferred National Plaintiffs' financial

records to foreign nationals residing overseas;

92.2.     certify the below described class and establish Mr. Stein, Ms. Fuller and

Mr. Ramson's claims under Count 1 as a national class action;

92.3.     appoint Mr. Stein, Ms. Fuller, and Mr. Ramson as a class representative;

92.4.     appoint Joseph Hennessey of Beins, Goldberg & Hennessey, LLP as Class

Counsel;

92.5.    declare that Bank of America has financial responsibility for the cost of class notification;

92.6.    use the records produced by Bank of America as the basis to identify members of the class and to notify them of the breach of the Right to Financial Privacy Act that has affected them;

92.7.    order payment to individual members of the class identified through the records provided by Bank of America of $100.00 for each separate transfer of financial records made by Bank of America to foreign nationals residing overseas;

92.8.    award punitive damages for each violation identified through the above-described process based on a finding that Bank of America consciously disregarded Plaintiffs' rights under the Right to Financial Privacy Act by ignoring repeated admonitions of such learned sources as the Federal Deposit Insurance Corporation and the Office of the Comptroller of the Currency that any foreign outsourcing undertaken by U.S. financial institutions fully conform with the laws of the United States;

92.9.    award the costs of this action together with reasonable attorney's fees as determined by the Court pursuant to 12 U.S.C. § 3417(a)(3).

92.10.  provide additional equitable relief, including an Order requiring Defendants to pay Plaintiff and all members of the Class for any act or practice declared by this Court to be unlawful;

92.11.  provide additional equitable relief, including *cy pres* (fluid recovery) relief, in the event that a residue exists in the common fund created for the Class, in order to ensure that Defendants are not relieved of their duty to pay statutory damages merely

because individuals entitled to relief cannot be located;

92.12.  award compensatory and exemplary damages including but not limited to treble damages, as allowed by applicable law;

92.13.  award pre- and post- judgment interest at the maximum legal rate; and

92.14.  take such other and further relief as the Court deems proper in order to achieve complete justice on the violations and wrong-doing complained of herein.

**COUNT 2**
**Injunctive Relief to Remedy**
**Violations of the Right to Financial Privacy Act**
Pursuant to 12 U.S.C. § 3418
By National Plaintiffs against All Defendants

93.    National Plaintiffs incorporate the allegations of Paragraph 1 through 79 into the allegations of Count 2.

94.    Bank of America has violated the Right to Financial Privacy Act.

95.    This Court is empowered pursuant to 12 U.S.C. § 3418 to provide injunctive relief to remedy violations of the Right to Financial Privacy Act.

96.    WHEREFOR, to ensure compliance with the Right to Financial Privacy Act, this Court should provide injunctive relief to compel compliance with the Act, including but not limited to:

96.1.    issuing an Order barring Bank of America from transmitting customer financial records to foreign nationals residing overseas until such time that Bank of America has obtained customer authorization as described in 12 U.S.C. § 3403(a);

96.2.    issuing an Order, pursuant to 12 U.S.C. § 3403(b), that Bank of America cannot make the authorization required under 12 U.S.C. § 3403(a) a condition of doing

business with Bank of America;

96.3.    issuing an Order, pursuant to 12 U.S.C. § 3403(c), that Bank of America

provide National Plaintiffs with a copy of all the records of all instances in which the

Customer's financial records have been disclosed to foreign nationals overseas and

thus, by implication, the Government through such agents as the National Security

Agency.

96.4.    Plaintiffs pray that the Court will issue whatever other Order or take

whatever action is necessary to afford complete relief in law and equity.

### COUNT 3
**Violation of the DC Consumer Protection Act**
Violation of D.C. Code § 28-3904 (a)
By Attorney Generals Stein, Fuller, and Ramson; and by DC Class Plaintiffs
Against All Defendants

97.    Attorneys General Stein, Fuller, and Ramson and DC Class Plaintiffs incorporate

the allegations of Paragraph 1 through 79 into the allegations of Count 3.

98.    Under D.C. Code § 28-3904 (a), "It shall be a violation of this chapter, whether or

not any consumer is in fact misled, deceived or damaged thereby, for any person to

represent that . . . services have a . . .  characteristics . . . that they do not have."

99.    Bank of America has integrated its overseas call/data center operations into

existing U.S.-based call/data center operations in a manner that creates the illusion that

a characteristic of its U.S.-based call/data centers, *i.e.*, the ability to safeguard DC Class

Plaintiffs' EDT from disclosure to the U.S. Government, is a characteristic that is shared

by Bank of America's overseas call/data centers.

100.    In fact, a significant the characteristic of Bank of America's U.S.-based call/data

centers is absent from Bank of America's overseas call/data centers.   Specifically, the overseas call/data centers cannot use the Fourth Amendment or U.S. laws to protect DC Class Plaintiffs' EDT from intrusion by the United States Government.

101.    Through its attempt to seamlessly integrate its overseas call/data center operations into its U.S.-based call/data center operations, Bank of America is trying to represent that the overseas call/data centers have characteristics that they do not actually have.

102.    As a consequence of representing that communication to and from Bank of America's overseas call/data centers has a characteristic it does not have, Bank of America has caused DC Class Plaintiffs to forfeit important rights under the U.S. Constitution and U.S. law protecting their EDT from intrusion by the U.S. Government and various foreign governments.

103.    Accordingly, Bank of America has violated DC Code 28-3904 (a).

104.    WHEREFORE, Attorneys General Stein, Fuller, and Ramson and DC Class Plaintiffs, exercising their authority to act on behalf of the general public pursuant to DC Code §28-3905 (k)(1), and acting as class action representative plaintiffs on behalf of all similarly situated DC Class Plaintiffs, seek the following remedies:

104.1. That Bank of America disclose records necessary for Attorneys General Stein, Fuller, and Ramson; DC Class Plaintiffs; and the Court to identify all members of the public and DC Class Plaintiffs whose EDT has been transferred by Bank of America U.S. to foreign nationals residing overseas.

104.2. That Bank of America pay statutory damages of $1,500.00 to each

individual affirmatively identified by the examination of records described above.

104.3. That Bank of America pay into a class action common fund $1,500.00 for each telephone call identified through the process described in this paragraph that, though attributable to a specific individual, cannot be paid to that individual for reasons beyond the control of the Parties.

104.4. That Bank of America pay reasonable attorney fees under DC Code § 28-3905(k)(1)(B).

104.5. That Bank of America pay punitive damages under DC Code § 28-3905(k)(1)(C) because Bank of America has consciously disregarded the interests of members of the public and DC Class Plaintiffs and jeopardized the general public's interest in being free of deceptive acts by ignoring various and readily available warnings issued by learned sources such as the Federal Deposit Insurance Corporation and the Office of the Comptroller of the Currency included in, but not limited to, such publications as "Guidance for Financial Institutions on the Use of Foreign-Based Third-Party Service Providers" and OCC Bulletin 2002-16, "Bank Use of Foreign-Based Third-Party Service Providers."

104.6. That Bank of America be enjoined from further unlawful trade practices pursuant to under DC Code § 28-3905(k)(1)(D).

104.7. That Bank of America be subject to any other remedy that this Court deems necessary to provide complete relief pursuant to under DC Code § 28-3905(k)(1).

105.     In addition, pursuant to DC Code § 28-3909 (a) and acting on behalf of the Attorney General for the District of Columbia, Plaintiffs Stein, Fuller, and Ramson

request that the Court issue a temporary or permanent injunction against the use of the unfair and deceptive methods, act, and practices by Bank of America described in this Complaint.

106.    In addition, pursuant to DC Code § 28-3909 (b) and acting on behalf of the Attorney General for the District of Columbia, Plaintiffs Stein, Fuller, and Ramson request that the Court assess Bank of America a civil penalty of not more than $1,000.00 for each violation of the DCCPA described herein and payable into the Consumer Protection Education Fund described at DC Code § 28-3905(n), the costs of this action, and any attorney fees not provided pursuant to DC Code § 28-3905(k)(1).

107.    That the Court enter whatever other relief or remedies are necessary to achieve complete justice for the harms alleged in this Count.

### COUNT 4
**Violation of the DC Consumer Protection Act**
Violation of D.C. Code § 28-3904 (b)
By Attorney Generals Stein, Fuller, and Ramson; and by
DC Class Plaintiffs against All Defendants

108.    Attorneys General Stein, Fuller, and Ramson and DC Class Plaintiffs incorporate the allegations of Paragraph 1 through 79 into the allegations of Count 4.

109.    Under D.C. Code § 28-3904 (b) "It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to represent that the person has a . . . status . . . that the person does not have."

110.    Bank of America has seamlessly integrated its overseas call/data center operations into existing U.S.-based call/data center operations to provide the illusion that its foreign national personnel who staff its overseas call/data centers have the same

status as its U.S.-based personnel who staff the U.S.-based call/data centers.

111.    On information and belief, some countries prohibit foreign ownership of the companies found within their borders.

112.    On information and belief, some countries require that foreign corporations do business through companies that are owned and/or managed by the nationals of that country.

113.    Thus, in some countries, the call/data centers used by Bank of America are not U.S. Persons under the Foreign Intelligence Surveillance Act.

114.    Generally speaking, a "U.S. Person" cannot be the target of Government surveillance absent the approval of the Foreign Intelligence Surveillance Act Court.

115.    Consequently, foreign national personnel staffing overseas call/data centers have a dramatically different status in comparison to the personnel staffing U.S.-based call/data centers.  Specifically, personnel staffing U.S.-based call/data centers have all the privileges and immunities necessary to protect DC Class Plaintiffs' EDT from intrusion by the United States Government, yet foreign national personnel staffing overseas call/data centers have none of the privileges or immunities necessary to safeguard DC Class Plaintiffs' EDT from intrusion by the U.S. Government.

116.    As a consequence of misrepresenting the status of its overseas call/data centers and of its foreign national staff, Bank of America has caused DC Class Plaintiffs to forfeit, or be in imminent danger of forfeiting, important Constitutional and statutory rights.

117.    By misrepresenting the status of its foreign national staff working at its overseas

call/data centers, Bank of America has violated DC Code 28-3904 (b).

118.    WHEREFORE, Attorneys General Stein, Fuller, and Ramson and DC Class

Plaintiffs, exercising their authority to act on behalf of the general public pursuant to

DC Code §28-3905 (k)(1), and acting as class action representative plaintiffs on behalf of

all similarly situated DC Class Plaintiffs, seek the following remedies:

118.1. That Bank of America disclose records necessary for Attorneys General

Stein, Fuller, and Ramson; DC Class Plaintiffs; and the Court to identify all members of

the public and DC Class Plaintiffs whose EDT has been transferred by Bank of America

U.S. to foreign nationals residing overseas.

118.2. That Bank of America pay statutory damages of $1,500.00 to each

individual affirmatively identified by the examination of records described above.

118.3. That Bank of America pay into a class action common fund $1,500.00 for

each telephone call identified through the process described in this paragraph that,

though attributable to a specific individual, cannot be paid to that individual for

reasons beyond the control of the Parties.

118.4. That Bank of America pay reasonable attorney fees under DC Code § 28-

3905(k)(1)(B).

118.5. That Bank of America pay punitive damages under DC Code § 28-

3905(k)(1)(C) because Bank of America has consciously disregarded the interests of

members of the public and DC Class Plaintiffs and jeopardized the general public's

interest in being free of deceptive acts by ignoring various and readily available

warnings issued by learned sources such as the Federal Deposit Insurance Corporation

26

and the Office of the Comptroller of the Currency included in, but not limited to, such publications as "Guidance for Financial Institutions on the Use of Foreign-Based Third-Party Service Providers" and OCC Bulletin 2002-16, "Bank Use of Foreign-Based Third-Party Service Providers."

118.6. That Bank of America be enjoined from further unlawful trade practices pursuant to under DC Code § 28-3905(k)(1)(D).

118.7. That Bank of America be subject to any other remedy that this Court deems necessary to provide complete relief pursuant to under DC Code § 28-3905(k)(1).

119.    In addition, pursuant to DC Code § 28-3909 (a) and acting on behalf of the Attorney General for the District of Columbia, Plaintiffs Stein, Fuller, and Ramson Stein, Fuller, and Ramson request that the Court issue a temporary or permanent injunction against the use of the unfair and deceptive methods, act, and practices by Bank of America described in this Complaint.

120.    In addition, pursuant to DC Code § 28-3909 (b) and acting on behalf of the Attorney General for the District of Columbia, Plaintiffs Stein, Fuller, and Ramson Stein, Fuller, and Ramson request that the Court assess Bank of America a civil penalty of not more than $1,000.00 for each violation of the DCCPA described herein and payable into the Consumer Protection Education Fund described at DC Code § 28-3905(n), the costs of this action, and any attorney fees not provided pursuant to DC Code § 28-3905(k)(1).

121.    That the Court enter whatever other relief or remedies are necessary to achieve complete justice for the harms alleged in this Count.

**COUNT 5**
**Violation of the DC Consumer Protection Act**
Violation of D.C. Code § 28-3904 (d)
By Attorney Generals Stein, Fuller, and Ramson; and by
DC Class Plaintiffs against All Defendants

122.    Attorneys General Stein, Fuller, and Ramson and DC Class Plaintiffs incorporate

the allegations of Paragraph 1 through 79 into the allegations of Count 5.

123.    Under D.C. Code § 28-3904 (d) "It shall be a violation of this chapter, whether or

not any consumer is in fact misled, deceived or damaged thereby, for any person to

represent that . . . services are of particular standard . . .  if in fact they are of another."

124.    Bank of America has integrated its overseas call/data center operations into

existing U.S.-based call/data center operations to provide the illusion that the services

provided by its overseas call/data centers are of the same standard as the services

provided by its U.S.-based call/data centers.

125.    In fact, the services provided by overseas call/data centers staffed by foreign

national personnel are not of the same standard as the services provided by Bank of

America's U.S.-based call/data centers.  The U.S.-based call/data centers operate at a

higher standard with respect to protecting DC Class Plaintiffs' EDT from intrusion by

the U.S. Governments and various foreign governments than do the overseas call/data

centers staffed by foreign national personnel.  Specifically, because U.S.-based call/data

centers enjoy the same privileges and immunities under the United States Constitution

as do DC Class Plaintiffs, the commerce of EDT between the U.S.-based call/data

centers and the DC Class Plaintiffs are protected from Government intrusion the Fourth

Amendment to the Constitution and by U.S. law.  By contrast, U.S. Constitutional and

statutory protections do not extend to foreign nationals residing overseas. Thus, EDT received by such foreign nationals and EDT sent from such foreign nationals have no legal protection inhibiting the seizure and search of such EDT by the United States Government.

126.    As a consequence of representing that the services provided by it overseas call/data centers are of the same standard as the services provided by its U.S.-based call/data centers, Bank of America has caused DC Class Plaintiffs to forfeit, or be at imminent risk of forfeiting important rights.

127.    WHEREFORE, Attorneys General Stein, Fuller, and Ramson and DC Class Plaintiffs, exercising their authority to act on behalf of the general public pursuant to DC Code §28-3905 (k)(1), and acting as class action representative plaintiffs on behalf of all similarly situated DC Class Plaintiffs, seek the following remedies:

127.1. That Bank of America disclose records necessary for Attorneys General Stein, Fuller, and Ramson; DC Class Plaintiffs; and the Court to identify all members of the public and DC Class Plaintiffs whose EDT has been transferred by Bank of America U.S. to foreign nationals residing overseas.

127.2. That Bank of America pay statutory damages of $1,500.00 to each individual affirmatively identified by the examination of records described above.

127.3. That Bank of America pay into a class action common fund $1,500.00 for each telephone call identified through the process described in this paragraph that, though attributable to a specific individual, cannot be paid to that individual for reasons beyond the control of the Parties.

127.4. That Bank of America pay reasonable attorney fees under DC Code § 28-3905(k)(1)(B).

127.5. That Bank of America pay punitive damages under DC Code § 28-3905(k)(1)(C) because Bank of America has consciously disregarded the interests of members of the public and DC Class Plaintiffs and jeopardized the general public's interest in being free of deceptive acts by ignoring various and readily available warnings issued by learned sources such as the Federal Deposit Insurance Corporation and the Office of the Comptroller of the Currency included in, but not limited to, such publications as "Guidance for Financial Institutions on the Use of Foreign-Based Third-Party Service Providers" and OCC Bulletin 2002-16, "Bank Use of Foreign-Based Third-Party Service Providers."

127.6. That Bank of America be enjoined from further unlawful trade practices pursuant to under DC Code § 28-3905(k)(1)(D).

127.7. That Bank of America be subject to any other remedy that this Court deems necessary to provide complete relief pursuant to under DC Code § 28-3905(k)(1).

128.     In addition, pursuant to DC Code § 28-3909 (a) and acting on behalf of the Attorney General for the District of Columbia, Plaintiffs Stein, Fuller, and Ramson request that the Court issue a temporary or permanent injunction against the use of the unfair and deceptive methods, act, and practices by Bank of America described in this Complaint.

129.     In addition, pursuant to DC Code § 28-3909 (b) and acting on behalf of the Attorney General for the District of Columbia, Plaintiffs Stein, Fuller, and Ramson

request that the Court assess Bank of America a civil penalty of not more than $1,000.00

for each violation of the DCCPA described herein and payable into the Consumer

Protection Education Fund described at DC Code § 28-3905(n), the costs of this action,

and any attorney fees not provided pursuant to DC Code § 28-3905(k)(1).

130.     That the Court enter whatever other relief or remedies are necessary to achieve

complete justice for the harms alleged in this Count.


**COUNT 6**
**Violation of the DC Consumer Protection Act**
Violation of D.C. Code § 28-3904 (f)
By Attorney Generals Stein, Fuller, and Ramson; and by
DC Class Plaintiffs against All Defendants

131.     Attorneys General Stein, Fuller, and Ramson and DC Class Plaintiffs incorporate

the allegations of Paragraph 1 through 79 into the allegations of Count 6.

132.     Under D.C. Code § 28-3904 (f), "It shall be a violation of this chapter, whether or

not any consumer is in fact misled, deceived or damaged thereby, for any person to fail

to state a material fact if such failure tends to mislead."

133.     The fact that Bank of America's transfer of members of the public and DC Class

Plaintiffs' EDT to foreign national residing overseas affects a forfeiture of members of

the public and DC Class Plaintiffs' Constitutional and statutory right to be free of

Government intrusion into such EDT is a material fact under the DCCPA.

134.     At no time does Bank of America disclose this fact to members of the public or

DC Class Plaintiffs.

135.     The failure to disclose the material fact of Fourth Amendment and statutory

forfeitures occasioned by Bank of America routing of members of the public and DC

Class Plaintiffs' EDT for foreign nationals residing overseas is a violation of D.C. Code §

28-3904 (f).

136.     WHEREFORE, Attorneys General Stein, Fuller, and Ramson and DC Class

Plaintiffs, exercising their authority to act on behalf of the general public pursuant to

DC Code §28-3905 (k)(1), and acting as class action representative plaintiffs on behalf of

all similarly situated DC Class Plaintiffs, seek the following remedies:

136.1. That Bank of America disclose records necessary for Attorneys General

Stein, Fuller, and Ramson; DC Class Plaintiffs; and the Court to identify all members of

the public and DC Class Plaintiffs whose EDT has been transferred by Bank of America

U.S. to foreign nationals residing overseas.

136.2. That Bank of America pay statutory damages of $1,500.00 to each

individual affirmatively identified by the examination of records described above.

136.3. That Bank of America pay into a class action common fund $1,500.00 for

each telephone call identified through the process described in this paragraph that,

though attributable to a specific individual, cannot be paid to that individual for

reasons beyond the control of the Parties.

136.4. That Bank of America pay reasonable attorney fees under DC Code § 28-

3905(k)(1)(B).

136.5. That Bank of America pay punitive damages under DC Code § 28-

3905(k)(1)(C) because Bank of America has consciously disregarded the interests of

members of the public and DC Class Plaintiffs and jeopardized the general public's

interest in being free of deceptive acts by ignoring various and readily available warnings issued by learned sources such as the Federal Deposit Insurance Corporation and the Office of the Comptroller of the Currency included in, but not limited to, such publications as "Guidance for Financial Institutions on the Use of Foreign-Based Third-Party Service Providers" and OCC Bulletin 2002-16, "Bank Use of Foreign-Based Third-Party Service Providers."

136.6. That Bank of America be enjoined from further unlawful trade practices pursuant to under DC Code § 28-3905(k)(1)(D).

136.7. That Bank of America be subject to any other remedy that this Court deems necessary to provide complete relief pursuant to under DC Code § 28-3905(k)(1).

137.    In addition, pursuant to DC Code § 28-3909 (a) and acting on behalf of the Attorney General for the District of Columbia, Plaintiffs Stein, Fuller, and Ramson request that the Court issue a temporary or permanent injunction against the use of the unfair and deceptive methods, act, and practices by Bank of America described in this Complaint.

138.    In addition, pursuant to DC Code § 28-3909 (b) and acting on behalf of the Attorney General for the District of Columbia, Plaintiffs Stein, Fuller, and Ramson request that the Court assess Bank of America a civil penalty of not more than $1,000.00 for each violation of the DCCPA described herein and payable into the Consumer Protection Education Fund described at DC Code § 28-3905(n), the costs of this action, and any attorney fees not provided pursuant to DC Code § 28-3905(k)(1).

139.    That the Court enter whatever other relief or remedies are necessary to achieve

complete justice for the harms alleged in this Count.

**COUNT 7**
**Violation of the DC Consumer Protection Act**
By Attorney Generals Stein, Fuller, and Ramson; and by
DC Class Plaintiffs against All Defendants

140.    Attorneys General Stein, Fuller, and Ramson and DC Class Plaintiffs incorporate

the allegations of Paragraph 1 through 79 into the allegations of Count 7.

141.    Under D.C. Code § 28-3904 (s), "It shall be a violation of this chapter, whether or

not any consumer is in fact misled, deceived or damaged thereby, for any person to

pass off goods or services as those of another."

142.    By seamlessly integrating its overseas call/data center operations into its existing

U.S.-based call/data center operations in a manner that provides no notice to DC Class

Plaintiffs of the dramatic difference that is occasioned when a foreign national at an

overseas call/data center is the terminus of a District of Columbia resident's EDT, Bank

of America has been passing off the services of its overseas call/data centers as the

same services as provided by its U.S.-based call/data centers.

143.    As a consequence of passing off the services of its overseas call/data centers for

the services of its U.S.-based call/data centers, Bank of America has caused DC Class

Plaintiffs to forfeit, or be in imminent danger of forfeiting, important Constitutional and

statutory rights.

144.    WHEREFORE, Attorneys General Stein, Fuller, and Ramson and DC Class

Plaintiffs, exercising their authority to act on behalf of the general public pursuant to

DC Code §28-3905 (k)(1), and acting as class action representative plaintiffs on behalf of

34

all similarly situated DC Class Plaintiffs, seek the following remedies:

144.1. That Bank of America disclose records necessary for Attorneys General Stein, Fuller, and Ramson; DC Class Plaintiffs; and the Court to identify all members of the public and DC Class Plaintiffs whose EDT has been transferred by Bank of America U.S. to foreign nationals residing overseas.

144.2. That Bank of America pay statutory damages of $1,500.00 to each individual affirmatively identified by the examination of records described above.

144.3. That Bank of America pay into a class action common fund $1,500.00 for each telephone call identified through the process described in this paragraph that, though attributable to a specific individual, cannot be paid to that individual for reasons beyond the control of the Parties.

144.4. That Bank of America pay reasonable attorney fees under DC Code § 28-3905(k)(1)(B).

144.5. That Bank of America pay punitive damages under DC Code § 28-3905(k)(1)(C) because Bank of America has consciously disregarded the interests of members of the public and DC Class Plaintiffs and jeopardized the general public's interest in being free of deceptive acts by ignoring various and readily available warnings issued by learned sources such as the Federal Deposit Insurance Corporation and the Office of the Comptroller of the Currency included in, but not limited to, such publications as "Guidance for Financial Institutions on the Use of Foreign-Based Third-Party Service Providers" and OCC Bulletin 2002-16, "Bank Use of Foreign-Based Third-Party Service Providers."

144.6. That Bank of America be enjoined from further unlawful trade practices pursuant to under DC Code § 28-3905(k)(1)(D).

144.7. That Bank of America be subject to any other remedy that this Court deems necessary to provide complete relief pursuant to under DC Code § 28-3905(k)(1).

145.    In addition, pursuant to DC Code § 28-3909 (a) and acting on behalf of the Attorney General for the District of Columbia, Plaintiffs Stein, Fuller, and Ramson request that the Court issue a temporary or permanent injunction against the use of the unfair and deceptive methods, act, and practices by Bank of America described in this Complaint.

146.    In addition, pursuant to DC Code § 28-3909 (b) and acting on behalf of the Attorney General for the District of Columbia, Plaintiffs Stein, Fuller, and Ramson request that the Court assess Bank of America a civil penalty of not more than $1,000.00 for each violation of the DCCPA described herein and payable into the Consumer Protection Education Fund described at DC Code § 28-3905(n), the costs of this action, and any attorney fees not provided pursuant to DC Code § 28-3905(k)(1).

147.    That the Court enter whatever other relief or remedies are necessary to achieve complete justice for the harms alleged in this Count.

### COUNT 8
### Violation of the DC Consumer Protection Act
Violation of D.C. Code § 28-3904 (t)
By Attorney Generals Stein, Fuller, and Ramson; and by
DC Class Plaintiffs against All Defendants

148.    Attorneys General Stein, Fuller, and Ramson and DC Class Plaintiffs incorporate

the allegations of Paragraph 1 through 79 into the allegations of Count 8.

149.    Under D.C. Code § 28-3904 (t), "It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to use deceptive representations or designations of geographic origin in connection with goods or services."

150.    To communicate with Bank of America, members of the public and DC Class Plaintiffs are directed to dial a U.S.-telephone number.

151.    By contrast, telecommunications that terminate overseas are made by dialing "011" and a variety of country code, and city code numbers.

152.    To make deliberate decision to call a foreign national overseas, members of the public and DC Class Plaintiffs must affirmatively dial "011" and purposefully avail himself or herself to the international call circuits, purposefully dial a country code, purposefully dial a city code, and then a specific phone number.

153.    By using the ten-digit number characteristic of a domestic U.S.-terminated telephone number yet then transferring such communication to a foreign national residing overseas, Bank of America deceives members of the public and DC Class Plaintiffs regarding the geographic origin of the customer service being provided to by Bank of America.

154.    Accordingly, Bank of America has violated D.C. Code § 28-3904 (t).

155.    WHEREFORE, Attorneys General Stein, Fuller, and Ramson and DC Class Plaintiffs, exercising their authority to act on behalf of the general public pursuant to DC Code §28-3905 (k)(1), and acting as class action representative plaintiffs on behalf of

all similarly situated DC Class Plaintiffs, seek the following remedies:

155.1. That Bank of America disclose records necessary for Attorneys General Stein, Fuller, and Ramson; DC Class Plaintiffs; and the Court to identify all members of the public and DC Class Plaintiffs whose EDT has been transferred by Bank of America U.S. to foreign nationals residing overseas.

155.2. That Bank of America pay statutory damages of $1,500.00 to each individual affirmatively identified by the examination of records described above.

155.3. That Bank of America pay into a class action common fund $1,500.00 for each telephone call identified through the process described in this paragraph that, though attributable to a specific individual, cannot be paid to that individual for reasons beyond the control of the Parties.

155.4. That Bank of America pay reasonable attorney fees under DC Code § 28-3905(k)(1)(B).

155.5. That Bank of America pay punitive damages under DC Code § 28-3905(k)(1)(C) because Bank of America has consciously disregarded the interests of members of the public and DC Class Plaintiffs and jeopardized the general public's interest in being free of deceptive acts by ignoring various and readily available warnings issued by learned sources such as the Federal Deposit Insurance Corporation and the Office of the Comptroller of the Currency included in, but not limited to, such publications as "Guidance for Financial Institutions on the Use of Foreign-Based Third-Party Service Providers" and OCC Bulletin 2002-16, "Bank Use of Foreign-Based Third-Party Service Providers."

38

155.6. That Bank of America be enjoined from further unlawful trade practices pursuant to under DC Code § 28-3905(k)(1)(D).

155.7. That Bank of America be subject to any other remedy that this Court deems necessary to provide complete relief pursuant to under DC Code § 28-3905(k)(1).

156.    In addition, pursuant to DC Code § 28-3909 (a) and acting on behalf of the Attorney General for the District of Columbia, Plaintiffs Stein, Fuller, and Ramson request that the Court issue a temporary or permanent injunction against the use of the unfair and deceptive methods, act, and practices by Bank of America described in this Complaint.

157.    In addition, pursuant to DC Code § 28-3909 (b) and acting on behalf of the Attorney General for the District of Columbia, Plaintiffs Stein, Fuller, and Ramson request that the Court assess Bank of America a civil penalty of not more than $1,000.00 for each violation of the DCCPA described herein and payable into the Consumer Protection Education Fund described at DC Code § 28-3905(n), the costs of this action, and any attorney fees not provided pursuant to DC Code § 28-3905(k)(1).

158.    That the Court enter whatever other relief or remedies are necessary to achieve complete justice for the harms alleged in this Count.

**COUNT 9**
**Violation of the DC Consumer Protection Act**
Violation of D.C. Code § 28-3904
By Attorney Generals Stein, Fuller, and Ramson; and by
DC Class Plaintiffs against All Defendants

159.    Attorneys General Stein, Fuller, and Ramson and DC Class Plaintiffs incorporate the allegations of Paragraph 1 through 79 into the allegations of Count 9.

160.    Attorneys General Stein, Fuller, and Ramson and DC Class Plaintiffs alleged that the totality of acts and practices by Bank of America violate the DC Consumer Protection Act, irrespective of whether such acts and practices are specifically described.

161.    WHEREFORE, Attorneys General Stein, Fuller, and Ramson and DC Class Plaintiffs, exercising their authority to act on behalf of the general public pursuant to DC Code §28-3905 (k)(1), and acting as class action representative plaintiffs on behalf of all similarly situated DC Class Plaintiffs, seek the following remedies:

161.1. That Bank of America disclose records necessary for Attorneys General Stein, Fuller, and Ramson; DC Class Plaintiffs; and the Court to identify all members of the public and DC Class Plaintiffs whose EDT has been transferred by Bank of America U.S. to foreign nationals residing overseas.

161.2. That Bank of America pay statutory damages of $1,500.00 to each individual affirmatively identified by the examination of records described above.

161.3. That Bank of America pay into a class action common fund $1,500.00 for each telephone call identified through the process described in this paragraph that,

though attributable to a specific individual, cannot be paid to that individual for reasons beyond the control of the Parties.

161.4. That Bank of America pay reasonable attorney fees under DC Code § 28-3905(k)(1)(B).

161.5. That Bank of America pay punitive damages under DC Code § 28-3905(k)(1)(C) because Bank of America has consciously disregarded the interests of members of the public and DC Class Plaintiffs and jeopardized the general public's interest in being free of deceptive acts by ignoring various and readily available warnings issued by learned sources such as the Federal Deposit Insurance Corporation and the Office of the Comptroller of the Currency included in, but not limited to, such publications as "Guidance for Financial Institutions on the Use of Foreign-Based Third-Party Service Providers" and OCC Bulletin 2002-16, "Bank Use of Foreign-Based Third-Party Service Providers."

161.6. That Bank of America be enjoined from further unlawful trade practices pursuant to under DC Code § 28-3905(k)(1)(D).

161.7. That Bank of America be subject to any other remedy that this Court deems necessary to provide complete relief pursuant to under DC Code § 28-3905(k)(1).

162.    In addition, pursuant to DC Code § 28-3909 (a) and acting on behalf of the Attorney General for the District of Columbia, Plaintiffs Stein, Fuller, and Ramson request that the Court issue a temporary or permanent injunction against the use of the unfair and deceptive methods, act, and practices by Bank of America described in this Complaint.

163.    In addition, pursuant to DC Code § 28-3909 (b) and acting on behalf of the

Attorney General for the District of Columbia, Plaintiffs Stein, Fuller, and Ramson

request that the Court assess Bank of America a civil penalty of not more than $1,000.00

for each violation of the DCCPA described herein and payable into the Consumer

Protection Education Fund described at DC Code § 28-3905(n), the costs of this action,

and any attorney fees not provided pursuant to DC Code § 28-3905(k)(1).

164.    That the Court enter whatever other relief or remedies are necessary to achieve

complete justice for the harms alleged in this Count.

## COUNT 10
### Unjust Enrichment
By Attorney Generals Stein, Fuller, and Ramson; and by
DC Class Plaintiffs against All Defendants

165.    Attorney Generals Stein, Stein, Fuller, and Ramson, and DC Class Plaintiffs

incorporate the allegations of Paragraph 1 through 79 into the allegations of Count 10.

166.    Attorneys General Stein, Stein, Fuller, and Ramson, DC Class Plaintiffs fees to

Bank of America in exchange for Bank of America providing a range of services to DC

Class Plaintiffs.  DC Class Plaintiffs have conferred a benefit upon Bank of America.

167.    Bank of America has knowingly retained the benefit conferred by DC Class

Plaintiffs' payment of fees and interest and was supposed to have established an

infrastructure necessary to provide the services anticipated by DC Class Plaintiffs.

168.    Yet, in its quest for additional profits, Bank of America has constructed its

services in a manner that was wholly unanticipated by its DC Class Plaintiffs.

Specifically, Bank of America has constructed a customer service infrastructure that

discloses EDT to the U.S. and foreign governments or places such EDT at risk of being

obtained by such governments.

169.    Bank of America constructed this customer service infrastructure in order to

maximize its own profits because the cost of providing the customer service of a quality

and characteristic anticipated by DC Class Plaintiffs is more than the cost of

constructing an infrastructure that results in the disclosure of EDT to the U.S. and

foreign government.

170.    As such, Bank of America has become unjustly enriched by retaining the annual

fees and interest payments conferred upon it by DC Class Plaintiffs.

171.    Under such circumstances, it would be unjust and unconscionable for Bank of

America to be allowed to keep the benefits conferred upon it by its cardholders.

172.    WHEREFORE, Attorneys General Stein, Fuller, and Ramson, DC Class Plaintiffs

pray that the Court order the return or partial return of fees and interests payment

benefits conferred upon Bank of America by DC Class Plaintiffs as a remedy for the

riches that Bank of America unjustly accumulated at the expense of DC Class Plaintiffs.

### COUNT 11
### Negligent Bailment
By DC Class Plaintiffs Against All Defendants

173.    DC Class Plaintiffs incorporate the allegations of Paragraph 1 through 79 into the

allegations of Count 11.

174.    Bank of America cardholders have deposited with Bank of America personal

property, *i.e.* EDT concerning personal purchases, account balances, and spending

habits to Bank of America for the specific purpose of receiving a variety of financial

services.

175.    Bank of America has accepted the delivery of such EDT for the purpose of providing and earning money from financial services provided to its cardholders.

176.    There exist express and implied agreements between Bank of America and DC Class Plaintiffs that the EDT will be used for this purpose.

177.    Privacy policies exist that limits the use of DC Class Plaintiffs EDT.  At no time does Bank of America indicate to its cardholders that it will provide cardholder financial information to the U.S. Government.

178.    Yet, contrary to the expectations of the cardholder bailors, Bank of America has been, through its outsourcing policies, providing cardholder EDT to the U.S. and foreign governments.

179.    WHEREFORE, DC Class Plaintiffs pray that the Court will enter an Order for Bank of America to pay DC Class Plaintiffs an amount, to be determined by a duly empanelled jury, that represents the fair market value of the EDT were the United States Government forced to enter into an arms-length transaction with DC Class Plaintiffs for the purchase of their EDT.

180.    DC Class Plaintiffs pray that the Court will provide any and all other relief necessary to achieve complete justice under Count 6.

## COUNT 12
### Negligence
By DC Class Plaintiffs Against All Defendants

181.    DC Class Plaintiffs incorporate the allegations of Paragraph 1 through 79 into the

allegations of Count 12.

182.    As a national financial institution, Bank of America has a duty to safeguard EDT

from disclosure to any Government authority.

183.    By providing EDT to foreign national personnel as a means of saving money on

labor costs, Bank of America has breached its duties to DC Class Plaintiffs because such

action waives the Constitutional and statutory protections that DC Class Plaintiffs EDT

would otherwise have were such EDT to remain in the United States.

184.    Bank of America's breach of its duties has caused DC Class Plaintiffs the loss of

the Constitutional and statutory protections that shielded their EDT from intrusion by

the Government.

185.    DC Class Plaintiffs have been damaged by this breach of duty because their EDT

has been opened to and accessed by the United States and foreign governments.

186.    WHEREFORE, DC Class Plaintiffs pray that the Court will hold Defendants joint

and severally liable for damages in an amount to be determined by a duly empanelled

jury to compensate then for the loss of the Constitutional and statutory rights that

protect their EDT from intrusion by the U.S. Government.

187.    DC Class Plaintiffs also pray that the Court Order Defendants to pay punitive

damages in the amount to be determined by a duly empanelled jury to punish

Defendants for ignoring learned sources on the dangers of foreign outsourcing and for

its gross and wanton disregard of National Plaintiffs' rights.

## CLASS ACTION ALLEGATIONS

188.    Plaintiffs Stein, Fuller, and Ramson seek to certify two class actions, one representing Bank of America customers throughout the United States; the other Bank of America customers who are protected by the DCCPA.

188.1.  With respect to claims arising under the <u>Right to Financial Privacy Act</u>, National Plaintiffs make the following allegations with respect to the suitability of the claims for treatment on a class-wide basis.

188.1.1.        This action is properly maintained as a class action under Fed. R. Civ. P. 23(a) for the following reasons:

188.1.1.1.        <u>Numerosity</u>.  Pursuant to Fed. R. Civ. P. 23(a)(1), the class of Bank of America customers whose EDT has been transferred by Bank of America to foreign national personnel residing overseas is so numerous that joinder of all members is impracticable.

188.1.1.2.        <u>Common Questions of Fact and Law</u>.   This should be maintained as a class action under Fed. R. Civ. P. 23(a)(2) as there exist questions of fact and law that are common to all of the Bank of America customers residing in the United States.

188.1.1.2.1.     By way of example, and not limitation, such <u>common questions of fact</u> are:

188.1.1.2.1.1.  Is the United States Government and are foreign governments engaged in electronic surveillance that seizes

46

and searches National Plaintiffs' EDT?

188.1.1.2.1.2.  Does Bank of America route U.S.-originated EDT to call overseas call/data centers staffed with foreign national personnel?

188.1.1.2.1.3.  Does Bank of America provide notice to its customers that customer EDT will be routed to overseas call/data centers staffed by foreign national personnel before such EDT are routed to such overseas call/data centers?

188.1.1.2.1.4.  Does Bank of America provide notice to its U.S.-based customers that Bank of America's unilateral decision to route such customer EDT to overseas call/data centers staffed with foreign national personnel will forfeit customers' right to safeguard their EDT from intrusion by the U.S. and foreign governments?

188.1.1.2.2.     By way of example, and not limitation, common questions of law include:

188.1.1.2.2.1.  Does the transfer of EDT from Bank of America to Bank of America Overseas and other foreign national personnel diminish the protection from intrusion by the U.S. and foreign governments that such records would have if those records remained within the United States?

188.1.1.2.2.2.  Does the United States Government have the authority to seize and search EDT received by or sent from foreign nationals residing overseas?

47

188.1.1.2.2.3.  Does communicating with a foreign national residing overseas forfeit right with respect to shielding such EDT from the intrusion of the U.S. Government?

188.1.1.2.2.4.  Does Bank of America cause an involuntary forfeiture of rights when it routes such customers' EDT to foreign nationals residing overseas?

188.1.1.3.    Similarity of Claims and Defenses.   The instant complaint should be maintained as a class action under Fed. R. Civ. P. 23(a)(3) as the U.S. -based customers all have similar claims under the Right to Financial Privacy Act.

188.1.1.4.    Adequacy of the Representative Plaintiff. Representative Plaintiffs are adequate representative plaintiff as their claims are typical of the absent class members, there exist no outstanding questions regarding any of the Representative Plaintiffs' veracity or ability to testify under oath regarding their relationship with Bank of America, nor any other known inhibition in their ability to assist counsel in bringing the claims asserted on behalf of the absent class members to a trial on the merits.

188.1.2.    The Risk of Inconsistent or Varying Adjudication.  This action should be maintained as a class action under Fed. R. Civ. P. 23(b)(1)(A) as separate courts considering the same issues of fact and law with respect to the forfeiture or non-forfeiture of rights occasioned by transmission of EDT to overseas call/data centers staffed by foreign national personnel might reach different results with respect to establishing Bank of America's duties with respect to its U.S.-based customers.  Such

inconsistent or varied results would create inconsistent standards of conduct for Bank of America with respect to the actions it will be expected to take to safeguard its U.S.-based customers' rights under the U.S. Constitution and Right to Financial Privacy Act.

188.1.3.      Consistent with Fed. R. Civ. P. 23(b)(2), Bank of America has acted with respect to its routing of U.S.-originating EDT to overseas call/data centers staffed by foreign national personnel in a manner that is generally applicable to all U.S.-based customers.  This makes final injunctive relief appropriate with respect to the class as a whole.

188.1.4.      Superiority of Class-Wide Adjudication.  Finally, class-wide adjudication is appropriate under Fed. R. Civ. P. 23(b)(3) as the questions of law or fact common to the U.S.-based Bank of America customers predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of this broad-based controversy.

188.1.5.      Additional Factors Favoring Class Certification:

188.1.5.1.      Litigation costs, in terms of discovery and complex legal arguments, are prohibitively expensive for individual Bank of America customer plaintiffs.  For example, individuals would have to bear the expense of expert testimony needed to testify about the pervasiveness of U.S. signals intercept surveillance and the sharing of captured EDT between and among governments.

188.1.5.2.      A single determination, on a class-wide basis, regarding whether Bank of America's unilateral decision to direct EDT to foreign national personnel located overseas violates the Consumer Protection Act will be cost

effective.

188.1.6.        The Definition of the Putative Class:  Without prejudice,

Plaintiffs seek the certification of the following class of plaintiffs:  "All Bank of America

customers residing in the United States whose financial records have been sent by Bank

of America to foreign national personnel residing overseas."

188.2.  With respect to claims arising under the District of Columbia Consumer

Protection Act, and DC common law torts of Unjust Enrichment, Negligent Bailment,

and Negligence, Plaintiffs make the following allegations with respect to the suitability

of the claims for treatment on a class-wide basis.

188.2.1.        This action is properly maintained as a class action under

Fed. R. Civ. P. 23 (a) for the following reasons:

188.2.1.1.        Numerosity.  Pursuant to Fed. R. Civ. P. 23

(a)(1), the class of Bank of America cardholders who reside in the District of Columbia is

so numerous that joinder of all members is impracticable.

188.2.1.2.        Common Questions of Fact and Law.  This

should be maintained as a class action under Fed. R. Civ. P. 23(a)(2) as there exist

questions of fact and law that are common to all of the Bank of America cardholders

residing in the District of Columbia.

188.2.1.2.1.        By way of example, and not

limitation, such common questions of fact are:

188.2.1.2.1.1.  Does Bank of

America route D.C.-originated EDT to call overseas call/data centers staffed with

foreign national personnel?

188.2.1.2.1.2.  Does Bank of America integrate its overseas call/data center operations into its U.S.-based call/data center operations so as to make the service they receive at the overseas call/data centers indistinguishable to DC Class Plaintiffs from the services provided at a U.S.-based call/data centers?

188.2.1.2.1.3.  Does Bank of America provide notice to DCPPA Plaintiffs who call U.S.-exchange toll-free telephone numbers that DC Class Plaintiffs will be routed to overseas call/data centers staffed by foreign national personnel before such data are routed to such overseas call/data centers?

188.2.1.2.1.4.  Does Bank of America provide reasonable notice to DC Class Plaintiffs that Bank of America's unilateral decision to route members of the public and DC Class Plaintiffs' EDT to overseas call/data centers staffed with foreign national personnel will forfeit DCCPA rights against government intrusion on their EDT?

188.2.1.2.2.     By way of example, and not limitation, common questions of law include:

188.2.1.2.2.1.  Is Bank of America disguising the geographic origin of services it provides to DC Class Plaintiffs when it directs DC Class Plaintiffs to dial U.S. telephone numbers yet then provides services from foreign national personnel residing overseas?

188.2.1.2.2.2.  Is the waiver of rights occasioned by communicating with a foreign national residing overseas a "material fact" under the DCCPA?

188.2.1.2.2.3.  Are services provided by foreign nationals overseas of a different standard than services provided by U.S. Persons where foreign nationals have no protections from U.S. Government intrusion?

188.2.1.2.2.4.  Has Bank of America become unjustly enriched through the utilization of foreign national personnel at a lower cost where the payment of interest and fees by its customers assumes the use of personnel who have adequate privileges and immunities to safeguard EDT from intrusion by the U.S. Government and foreign governments?

188.2.1.2.2.5.  Is Bank of America liable for Negligent Bailment when its system of information sharing – wherein information is sent outside the protections of U.S. law and the U.S. Constitution – causes DC Class Plaintiffs to lose their ability to exclude the Government from their EDT?

188.2.1.2.2.6.  Has Bank of America acted negligently in causing a forfeiture of Constitutional and statutory protections against government intrusion?

188.2.1.2.2.7.  Do Bank of America's attempts to pass off the services of its overseas call/data centers as having

the same characteristic, the same status, and the same origin as U.S.-based call/data centers constitute a violation of the District of Columbia Consumer Protection Act?

      188.2.1.3.    <u>Similarity of Claims and Defenses</u>.  DC Class Plaintiffs' claims can be maintained as a class action under Fed. R. Civ. P. 23(a)(3) as DC Class Plaintiffs all have similar claims under the DC Consumer Protection Act with respect to Bank of America's routing EDT to overseas call/data centers staffed by foreign national personnel.

      188.2.1.4.    <u>Adequacy of the Representative Plaintiff</u>.  Mr. Stein, Ms. Fuller, and Mr. Ramson are adequate representative plaintiffs as their claims are typical of the absent class members, there exist no outstanding questions regarding Plaintiffs veracity or ability to testify under oath regarding their relationship with Bank of America, nor any other known inhibition in their ability to assist counsel in bringing the claims asserted on behalf of the absent class members to a trial on the merits.

      188.2.2.    <u>The Risk of Inconsistent or Varying Adjudication</u>.  This action should be maintained as a class action under Fed. R. Civ. P. 23 (b)(1)(A) as separate courts considering the same issues of fact and law with respect to the forfeiture or non-forfeiture of rights occasioned by transmission of electronic data to overseas call/data centers staffed by foreign national personnel might reach different results with respect to establishing Bank of America's duties with respect to DC Class Plaintiffs.  Such inconsistent or varied results would create inconsistent standards of conduct for Bank of America with respect to the actions it will be expected to take to safeguard its U.S.-based cardholders' rights under the U.S. Constitution.

188.2.3.        Consistent with Fed. R. Civ. P. 23 (b)(2), Bank of America has acted with respect to its routing of DC Class Plaintiffs' EDT to overseas call/data centers staffed by foreign national personnel in a manner that is generally applicable to all DC Class Plaintiffs.  This makes final injunctive relief appropriate with respect to the class as a whole.

188.2.4.        <u>Superiority of Class-Wide Adjudication</u>.  Finally, class-wide adjudication is appropriate under Fed. R. Civ. P. 23(b)(3) as the questions of law or fact common to the D.C.-based Bank of America cardholders predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of this broad-based controversy.

188.2.5.        <u>Additional Factors Favoring Class Certification</u>:

188.2.5.1.        Litigation costs, in terms of discovery and complex legal arguments, are prohibitively expensive for individual Bank of America cardholder plaintiffs.  For example, individuals would have to bear the expense of expert testimony needed to testify about the pervasiveness of U.S. signals intercept surveillance and the sharing of captured EDT between and among governments.

188.2.5.2.        A single determination, on a class-wide basis, regarding whether Bank of America's unilateral decision to direct DC Class Plaintiffs' EDT to foreign national personnel located overseas violates the Consumer Protection Act will be cost effective.

188.2.6.        <u>The Definition of the Putative Class</u>:  Without prejudice,

54

Plaintiffs seek the certification of the following class of plaintiffs: "All Bank of America customers residing in, or with sufficient contacts with the District of Columbia to have protection under the District of Columbia Consumer Protection Act, whose EDT have been sent by Bank of America U.S. to foreign national personnel residing overseas."

189.    WHEREFORE, Plaintiffs, on their own behalf and on behalf of all those similarly-situated, requests that the Court granted the relief requested in the above-numbered paragraphs and any and all forms of legal and equitable relief the Court deems necessary to provide complete justice with respect to the above-alleged facts.

<u>NOTIFICATION OF SECURITY BREACH</u>

190.    Pursuant to DC Code 28-3852, and to the extent Bank of America is not already on notice of a security breach caused by its routing of U.S.-based customer EDT to overseas call/data centers staffed by foreign national personnel, Bank of America is hereby notified of such a security breach and is requested to take appropriate remedial action under DC Code 28-3852.

191.    WHEREFORE, in addition to the specific remedies requested for each individual count, Plaintiff, individually and on behalf of the Class members defined herein, Plaintiffs generally pray for judgment and relief on all Causes of Action as follows:

191.1.  a declaration that Defendants are joint and severally liable for the harms and damages described herein;

191.2.  the certification of the Class as a class action on the grounds requested herein;

191.3.  the appointment of Plaintiff as a Class representative;

55

191.4.  the appointment of Beins, Goldberg & Hennessey, LLP as Class Counsel;

191.5.  a declaration of financial responsibility on the part of Defendants for the costs of Class notification;

191.6.  restitution to Mr. Stein, Ms. Fuller and Mr. Ransom and members of the DCCPA Class;

191.7.  disgorgement to Plaintiff and each member of the DCCPA Class, including disgorgement of all revenues, earnings, profits, compensation, and benefits which Defendants obtained as a result of the conduct alleged in this Complaint;

191.8.  a temporary, preliminary and/or permanent order, as might be requested, for injunctive relief enjoining Defendants from pursuing the policies, acts and practices alleged herein;

191.9.  additional equitable relief, including an Order requiring Defendants to pay Plaintiff and all members of the Class for any act or practice declared by this Court to be unlawful;

191.10.      additional equitable relief, including cy pres (fluid recovery) relief, in the event that a residue exists in the common fund created for the Class, in order to ensure that Defendants do not retain any illicit profit;

191.11.      an award of compensatory and exemplary damages including but not limited to treble damages, as allowed by applicable law;

191.12.      an award of attorneys' fees, as allowed by applicable law;

191.13.      an award of costs, as allowed by law;

191.14.      an award of pre- and post- judgment interest at the maximum legal

rate; and

191.15.        such other and further relief as the Court deems proper in order to

achieve complete justice on the violations and wrong-doing complained of herein.

Respectfully submitted this Tuesday, August 02, 2011.


_____

Joseph A. Hennessey, Esq.
DC Bar No. 453582
Attorney for Plaintiffs
Beins, Goldberg & Hennessey, LLP
2 Wisconsin Circle, Suite 700
Chevy Chase, MD  20185
240-235-5040
JHennessey@bghllp.com

Anne Toomey McKenna, Esq.
DC Bar No. 450414
Toomey McKenna Law Group, LLC
8 Montrose Avenue
Baltimore, MD  21228
410-627-2715
anne@toomeymckennalaw.com