**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JEFFREY STEIN, et al., | |
| Plaintiffs, | No. 1:11-cv-01400 (RBW) |
| v. | |
| BANK OF AMERICA CORPORATION, et al., | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

<u>**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**</u>

PLEASE TAKE NOTICE that Defendants Bank of America Corporation, Bank of America, N.A., FIA Card Services, N.A., MBNA Technology, Inc., BA Continuum India Pvt. Ltd., BA Continuum Private Ltd., BA Continuum Philippines, Inc., BA Continuum Costa Rica Ltda., and BA Continuum Mexico, S.C. (collectively, "Bank of America"), by and through undersigned counsel, hereby move the Court , as soon as counsel may be heard, for an order dismissing with prejudice Plaintiffs' First Amended Complaint, for (i) lack of subject matter jurisdiction under Rule 12(b)(1) and (ii) failure to state a claim under Rule 12(b)(6).  In support of this Motion, Bank of America submits the attached Memorandum of Points and Authorities, Declaration of Jessica Kaufman, and attached Exhibits.

November 1, 2011                    Respectfully submitted,


                                   /s/ Michael V. Sachdev_____

                                   Michael V. Sachdev (D.C. Bar No. 979102)
                                   2000 Pennsylvania Avenue, N.W., Suite 6000
                                   Washington, D.C. 20006-1888
                                   Tel:  (202) 887-1500
                                   Fax: (202) 887-0763
                                   Email:  msachdev@mofo.com

                                   Mark P. Ladner (*Pro hac vice*)
                                   Michael B. Miller (*Pro hac vice*)
                                   Jessica L. Kaufman (*Pro hac vice*)
                                   1290 Avenue of the Americas
                                   New York, NY 10104-0050
                                   Tel:  (212) 468-8000
                                   Fax:  (212) 468-7900
                                   Email:  mladner@mofo.com
                                   Email:  mbmiller@mofo.com
                                   Email:  jkaufman@mofo.com

                                   *Attorney for Defendants Bank of America
                                   Corporation, Bank of America, N.A., FIA Card
                                   Services, N.A., MBNA Technology, Inc., BA
                                   Continuum India Pvt. Ltd., BA Continuum Private
                                   Ltd., BA Continuum Philippines, Inc., BA
                                   Continuum Costa Rica Ltda., and BA Continuum
                                   Mexico, S.C.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JEFFREY STEIN, et al.,<br><br>                             Plaintiffs,<br><br>       v.<br><br>BANK OF AMERICA CORPORATION, et al.,<br><br>                            Defendants. | No. 1:11-cv-01400 (RBW) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
<u>DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................................... 1

RELEVANT FACTUAL BACKGROUND .......................................................................... 3

I.       PARTIES .................................................................................................................. 3

II.      ALLEGATIONS OF THE COMPLAINT ........................................................... 4

ARGUMENT ............................................................................................................................. 5

I.       PLAINTIFFS HAVE NOT BEEN INJURED, AND THUS LACK STANDING ............ 5

         A.       Because the Complaint Does not Implicate Plaintiffs' Rights under the
                  Fourth Amendment and RFPA, Plaintiffs Have not Alleged Invasion of a
                  Legally Protected Interest Sufficient to Confer Article III Standing .................... 6

         B.       Plaintiffs Have Suffered no Other Concrete Injury in Fact Conferring
                  Article III Standing .............................................................................................. 10

II.      PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF UNDER THE RFPA .......... 14

CONCLUSION ...................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

* *Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
    607 F. Supp. 2d 500 (S.D.N.Y. 2009) ............................................................... 11, 12

*ACLU v. NSA*,
    493 F.3d 644 (6th Cir. 2007) ........................................................................... 11, 12

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ...................................................................................... 3, 14

* *Beam v. Mukasey*,
    No. 07 C 1227, 2008 U.S. Dist. LEXIS 82491 (N.D. Ill. Oct. 15, 2008) ................. 8, 9, 15-16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................ 14, 18

*Chao v. Cmty. Trust Co.*,
    474 F.3d 75 (3d Cir. 2007) ................................................................................. 8, 17

*Edwards v. Carter*,
    445 F. Supp. 1279 (D.D.C. 1978) .......................................................................... 14

*Flowers v. First Hawaiian Bank*,
    295 F.3d 966 (9th Cir. 2002) ................................................................................. 18

*Foretich v. United States*,
    351 F.3d 1198, 359 U.S. App. D.C. 54 (D.C. Cir. 2003) .......................................... 5

*Giordano v. Wachovia Sec., LLC*,
    No. 06-476, 2006 U.S. Dist. LEXIS 52266 (D.N.J. July 31, 2006) ......................... 13

*Grine v. Colburn's Air Conditioning & Refrigeration, Inc.*,
    No. 09-11, 2009 U.S. Dist. LEXIS 75344 (W.D. Pa. Aug. 25, 2009) .................... 7-8

*Gyamfi v. Wells Fargo-Wachovia Bank*,
    No. 09-CV-3001, 2010 U.S. Dist. LEXIS 131870 (D. Md. Dec. 14, 2010) ............ 17

*In re iPhone Application Litig.*,
    No. 11-MD-02250, 2011 U.S. Dist. LEXIS 106865 (N.D. Cal. Sept. 20, 2011) ...... 13

*Kvech v. Holder*,
    No. 10-cv-545, 2011 U.S. Dist. LEXIS 105541 (D.D.C. Sept. 19, 2011) ............. 15

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ................................................................................................ 5, 7

*Patel v. Hayman*,
No. 08-3586, 2009 U.S. Dist. LEXIS 51919 (D.N.J. June 18, 2009) ....................................... 7

*Puerta v. United States*,
121 F.3d 1338 (9th Cir. 1997) ............................................................................................ 16

*Randolph v. ING Life Ins. & Annuity Co.*,
486 F. Supp. 2d 1 (D.D.C. 2007) ....................................................................................... 12

*Schlesinger v. Reservists Comm. to Stop the War*,
418 U.S. 208 (1974) ........................................................................................................ 6

*SEC v. Jerry T. O'Brien, Inc.*,
467 U.S. 735 (1984) .................................................................................................... 8, 10

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .......................................................................................................... 6

*Toader v. J.P. Morgan Chase Bank, N.A.*,
No. 09 C 6684, 2011 U.S. Dist. LEXIS 95342 (N.D. Ill. Aug. 23, 2011) ............................. 17

*Tooley v. Napolitano*,
556 F.3d 836 (D.C. Cir. 2009) ........................................................................................ 15

*U.S. Parole Comm'n v. Geraghty*,
445 U.S. 388 (1980) ........................................................................................................ 6

*United States v. Kington*,
801 F.2d 733 (5th Cir. 1986) ............................................................................................ 8

*\* United States v. Miller*,
425 U.S. 435 (1976) ..................................................................................................... 3, 7

*United States v. Thompson*,
No. 07-303-1, 2010 U.S. Dist. LEXIS 118628 (W.D. Pa. Nov. 8, 2010) ................................ 8

*United States v. Zimmerman*,
957 F. Supp. 94 (N.D. W. Va. 1997) ................................................................................. 7

*\* Walker v. S.W.I.F.T. SCRL*,
517 F. Supp. 2d 801 (E.D. Va. 2007) ............................................................................ 11, 12

*Wright v. Wachovia Bank, N.A.*,
No. 08-99-GMS, 2011 U.S. Dist. LEXIS 73942 (D. Del. July 11, 2011) ............................. 10

*Young v. U.S. Dep't of Justice*,
　882 F.2d 633 (2d Cir.1989) ................................................................................. 16

*Zhengxing v. USPTO*,
　579 F. Supp. 2d 160 (D.D.C. 2008) ........................................................................ 9

## STATUTES

12 U.S.C. § 3401 *et seq.* ................................................................................................. 8

12 U.S.C. § 3403(a) ................................................................................................... 8, 16

Defendants Bank of America Corporation, Bank of America, N.A., FIA Card Services, N.A., MBNA Technology, Inc., BA Continuum India Pvt. Ltd., BA Continuum Private Ltd., BA Continuum Philippines, Inc., BA Continuum Costa Rica Ltda., and BA Continuum Mexico, S.C. (collectively, "Bank of America" or the "Bank"), respectfully submit this memorandum of points and authorities in support of their motion to dismiss the First Amended Complaint (the "Complaint") in this action, for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs in this action are two Bank of America customers who object to even the possibility that Bank of America will route their customer service calls to someone who does not live in the United States.  Their objection is based on the alleged possibility that the United States Government or a foreign government will access financial data that might be sent to a customer service center overseas in connection with a service call.  Plaintiffs do not allege that this has happened to them, or for that matter, to anyone else.

Plaintiffs do not allege:

- That they ever personally called or otherwise contacted Bank of America;

- That they ever personally called or otherwise contacted Bank of America and had their call directed to a call or data center located outside of the United States;

- That financial records associated with their accounts were transmitted to a call or data center located outside of the United States;

- That the United States Government ever accessed financial records associated with Plaintiffs' own accounts;

- That Bank of America had any notice whatsoever that the United States Government accessed financial records associated with Plaintiffs' accounts;

- That Bank of America actually provided financial records associated with Plaintiffs' accounts to the United States Government;

- That any government conducted any actual surveillance of electronic transmissions containing financial records associated with Plaintiffs' accounts, or even tried to do so;

- That there is anything deficient about the security procedures Bank of America employs to protect such data.

Although Plaintiffs purport to assert claims under the Right to Financial Privacy Act ("RFPA"), they offer no more than an abstract concern over the sharing of financial information with overseas customer service representatives.  But that concern does not constitute a case or controversy establishing Article III standing, and the Complaint should be dismissed for lack of subject matter jurisdiction. And even if Plaintiffs had an injury sufficient to confer standing, their RFPA claims fail on the merits.

Simply put, Plaintiffs allege no injury in fact because Plaintiffs do not allege that anyone, anywhere, has actually obtained their financial information or even tried to do so.  Plaintiffs attempt to circumvent this fatal flaw by alleging a novel "injury," claiming that, in light of what they say is "pervasive" covert international surveillance by the United States and other governments, Bank of America has forfeited their customers' Fourth Amendment and "statutory rights" by sending customer financial information outside of the United States.[1]  Plaintiffs' theory fails, however, because the law is clear that Plaintiffs do not actually possess the Fourth Amendment rights that they claim Bank of America has led them to forfeit.  The United States

---

[1] Plaintiffs are vague about which "statutory rights" they claim have been forfeited, but they appear to be referring to rights under the RFPA.

Supreme Court has definitively ruled that bank customers do not have any Fourth Amendment rights in financial information that they have already willingly given to a third party—a bank. *See United States v. Miller*, 425 U.S. 435, 443 (1976).  The claim of forfeited rights under the RFPA fares no better, because the conduct alleged here falls clearly outside the ambit of the statute.

Although this Court need not look beyond Plaintiffs' lack of standing, the merits of Plaintiffs' claims fare no better.  The RFPA only creates a cause of action against financial institutions that "provide" customer financial records to a "United States Government authority." Even assuming that Plaintiffs' allegations "on information and belief" were anything more than conclusory (which they are not), Plaintiffs do not allege any facts suggesting that Bank of America "provided" their financial records to the government.  Moreover, Bank of America cannot have breached a notice obligation under the RFPA; the statute imposes customer notice obligations on the government only, not on financial institutions.  Because the Complaint is wholly devoid of "factual content that allows the court to draw a reasonable inference that the defendant is liable for" a violation of the RFPA, Plaintiffs' RFPA claims fall far short of the "facial plausibility" required to survive a motion to dismiss.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Because Plaintiffs lack standing and fail to state any plausible claims, Bank of America respectfully submits that the Complaint should be dismissed with prejudice.

## RELEVANT FACTUAL BACKGROUND

### I.   PARTIES

Defendant Bank of America Corporation is a bank holding company located in Charlotte, North Carolina.  (First Amended Complaint ["FAC"] ¶ 5.)  Defendant Bank of America, N.A. is a national banking association, and FIA Card Services, N.A. and MBNA Technology, Inc. are

operating subsidiaries of Bank of America.  (*See* FAC ¶¶ 6-8.)  Defendants BA Continuum India

Pvt. Ltd., BA Continuum Private Ltd., BA Continuum Philippines, Inc., BA Continuum Costa

Rica Ltda., and BA Continuum Mexico, SC are international operating subsidiaries of Bank of

America that are part of Bank of America's customer service network.  (FAC at ¶¶ 10, 15, 20,

25, 30.)

Plaintiffs Jeffrey Stein and Rabindranauth Ramson ("Plaintiffs")[2] are allegedly Bank of

America customers who "engage[] in a variety of transactions with and through Bank of

America."  (FAC ¶¶ 1-2.)  Plaintiffs bring their claims under the RFPA in their individual

capacities and as representatives of a putative class of "Bank of America customers residing in

the United States whose financial records have been sent by Bank of America U.S. to foreign

national personnel residing overseas."  (FAC ¶¶ 3.1-3.2.)

## II.    ALLEGATIONS OF THE COMPLAINT

Plaintiffs allege that "through various contractual relationships with Plaintiffs, Bank of

America agrees to provide various financial services to Plaintiffs in exchange for fees, interest,

and other charges . . ." (FAC ¶ 42), and that the Bank transmits their customer financial

information to affiliates and/or subsidiaries located overseas "so that such overseas personnel can

service Plaintiffs [sic] inquiries and questions."  (FAC ¶ 36.)  Plaintiffs further assert that the

Bank does not affirmatively inform Plaintiffs when their calls are routed to Bank subsidiaries and

affiliates located overseas and that the Bank does not obtain "Plaintiffs' consent to the forfeiture

of Fourth Amendment and statutory rights . . ." (FAC ¶¶ 72-76.)

Plaintiffs make several additional allegations "on information and belief," without any

indication that any of this information is in the possession of Bank of America or otherwise

---

[2] On October 6, 2011, Priscilla Fuller voluntarily dismissed her own cause of action against
Defendants pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).

based in fact.  Many of these "information and belief" allegations are intertwined with legal conclusions.  These allegations include that "the United States maintains a global electronic signals interception system that, each day, collects billions of telecommunications and electronic data . . . that are received and sent from foreign nationals residing overseas."  (FAC ¶ 60.) According to Plaintiffs, through this "signals interception system" the United States Government or other governments "search[ ]" and "seize[ ]" "all" or "substantially all" electronic transmissions sent to or received by foreign nationals residing overseas.  (FAC ¶ 61-64; 66-67.) Plaintiffs further state that the U.S. government and other foreign governments share among themselves the data obtained through the surveillance of electronic telecommunications.  (FAC ¶¶ 67-69.)

## **ARGUMENT**

## I.      **PLAINTIFFS HAVE NOT BEEN INJURED, AND THUS LACK STANDING.**

To establish the minimum constitutional requirements of Article III standing, a plaintiff must demonstrate that: "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Foretich v. United States*, 351 F.3d 1198, 1210, 359 U.S. App. D.C. 54, 66 (D.C. Cir. 2003) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

Abstract concern does not suffice to establish an Article III injury in fact.  Satisfying the injury requirement for standing requires a showing that the plaintiff has "suffered an invasion of a legally protected interest" that is real and not hypothetical.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).   "[T]he [Supreme] Court has rejected all attempts to substitute abstract

concern with a subject . . . for the concrete injury required by Art. III."  *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 410 (1980) (internal quotation marks omitted) (citing cases); *see also Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220-21 (1974).  A plaintiff who lacks Article III standing has not presented the court with a "case or controversy;" thus, an Article III federal court lacks subject matter jurisdiction over the suit.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).  Such cases should be dismissed under Rule 12(b)(1).

The Court's analysis of the Complaint can begin and end here:  Plaintiffs have suffered no injury.  The entire Complaint is premised on the invasion of "Constitutional and statutory rights" that Plaintiffs do not possess.  Where Plaintiffs cannot allege that anything has actually happened to them—either in the form of actual access to their bank records or the forfeiture of any constitutional or statutory right—they lack an injury in fact that confers Article III standing, and as a result, the Complaint should be dismissed for lack of subject matter jurisdiction.

A.     **Because the Complaint Does Not Implicate Plaintiffs' Rights Under the Fourth Amendment and RFPA, Plaintiffs Have Not Alleged Invasion of a Legally Protected Interest Sufficient to Confer Article III Standing.**

Plaintiffs assert the same "injury" with respect to all of their claims for relief:  "the forfeiture of the Constitutional and statutory rights[3] that constrain the surveillance by the United States Government."  (Comp. at ¶ 71.)  But this allegation sidesteps Plaintiffs' inability to allege that anything has *actually happened* to *their* bank records.  They accomplish this by suggesting that Plaintiffs need not have suffered a concrete and particularized, actual or imminent harm because they have rights under the Fourth Amendment and RFPA that are allegedly forfeited by

---

[3] Plaintiffs are vague as to what "statutory" rights have allegedly been compromised, but Bank of America assumes they mean to refer to the rights created by the RFPA.

the Bank's alleged transmission of customer financial information outside of the United States, whether or not anything ever happened.

Plaintiffs are wrong.  The forfeiture of Fourth Amendment and RFPA rights cannot constitute "an invasion of a legally protected interest" that is real and not hypothetical, *see Lujan*, 504 U.S. at 560, because Plaintiffs do not possess these rights in the first place.

First, although the Complaint makes much of Plaintiffs' alleged rights under the Fourth Amendment, the law is clear that Plaintiffs simply have no Fourth Amendment rights to forfeit, because the Fourth Amendment does not protect any of the customer personal information at issue in this case.

The United States Supreme Court held in *United States v. Miller* that bank customers have no protectable Fourth Amendment interest in bank account information because they do not have a reasonable expectation of privacy in information handed over to a third party. 425 U.S. at 443.  There is no reasonable expectation of privacy in such records because "[t]he depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government."  *Id*. (citing *United States v. White*, 401 U.S. 745, 751-752 (1971)). As federal courts routinely recognize, *Miller* "remains the law of the land:" Plaintiffs have no standing to invoke Fourth Amendment protection for bank records.  *See United States v. Zimmerman*, 957 F. Supp. 94, 96 (N.D. W. Va. 1997); *Patel v. Hayman*, No. 08-3586, 2009 U.S. Dist. LEXIS 51919, at *12 (D.N.J. June 18, 2009) ("The Supreme Court has expressly held that a customer has no legitimate expectation of privacy in financial records held by a financial institution and, thus, that a government search of such records does not violate the Fourth Amendment."); *Grine v. Colburn's Air Conditioning & Refrigeration, Inc.*, No. 09-11, 2009 U.S.

Dist. LEXIS 75344, at *40-42 (W.D. Pa. Aug. 25, 2009).  Plaintiffs, therefore, cannot claim that Bank of America has somehow forced them to waive a Fourth Amendment right they never had.

Second, Plaintiffs cannot premise their injury on the forfeiture of rights under the RFPA: none of Plaintiffs' allegations fall within the narrow swathe of rights the RFPA creates.  *See SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745 (1984) ("[t]he most salient feature of the Act is the narrow scope of the entitlements it creates"); *United States v. Thompson*, No. 07-303-1, 2010 U.S. Dist. LEXIS 118628, at *46 (W.D. Pa. Nov. 8, 2010) ("the RFPA did not alter *Miller*'s holding").[4]   The RFPA imposes procedural and notice obligations on United States Government authorities when they request customer financial records from a financial institution.  *See* 12 U.S.C. § 3401 *et seq.*  The statute also limits the "release of records by financial institutions," providing that "no financial institution, or officer, employees, or agent of a financial institution, may provide to any Government authority access to or copies of, or the information contained in, the financial records of any customer except" where the Government has complied with the procedures set out by the statute.  12 U.S.C. § 3403(a).

To describe the invasion of a legally-protected interest, the Complaint must, at minimum, describe the type of injury contemplated by the RFPA. *See Beam v. Mukasey*, No. 07 C 1227, 2008 U.S. Dist. LEXIS 82491, at *24 (N.D. Ill. Oct. 15, 2008) (holding that Plaintiffs suffered no injury to a legally-protected interest where defendant's conduct fell outside of the scope of rights created by the RFPA). The RFPA creates standing to address a financial institution's

---

[4] *See also Chao v. Cmty. Trust Co.*, 474 F.3d 75, 83 (3d Cir. 2007) ("[T]he Supreme Court has made clear that [the] RFPA is to be narrowly construed") (citing *O'Brien*, 467 U.S. at 745); *United States v. Kington*, 801 F.2d 733, 737 (5th Cir. 1986) ("While it is evident that Congress has expanded individuals' right to privacy in bank records of their accounts, appellees are mistaken in their contention that the expansion is of constitutional dimensions").

actual release of customer bank records to a Government entity.  Plaintiffs do not claim that this happened to them.

Instead, Plaintiffs' theory of injury demands that the RFPA applies even where a financial institution did not convey customer financial information to the Government. Plaintiffs' overly broad interpretation of § 3403(a), which would trigger a violation without *any action* on the part of the financial institution, is contrary to the plain language of the statute.[5]

Both "provide" and "release" demand an affirmative act by the financial institution, which Plaintiffs do not allege has happened here.  A contrary interpretation would lead to absurd results.  If courts considered every instance of secret government surveillance of electronically transmitted bank records tantamount to the "release" or "provision" of financial records under the RFPA, then *every* electronic transmission of financial information—whether domestic or international, whether within the institution or outside of it—could constitute an RFPA violation on the part of a financial institution, assuming the government actually conducts the type of pervasive surveillance Plaintiffs conclusorily allege.[6]  An interpretation that permitted claims

---

[5] *See Beam*, 2008 U.S. Dist. LEXIS 82491, at *23 (dismissing RFPA claim for lack of standing *and* failure to state a claim where plaintiffs' reading of the statute was "defeated by the plain language of the Act").

[6] In fact, Plaintiffs' expansive interpretation would contradict the guidance of federal regulatory bodies that advise financial institutions on working with overseas affiliates.  Reports issued by the Office of the Comptroller of the Currency ("OCC") and the Federal Deposit Insurance Corporation ("FDIC"), which Plaintiffs refer to as "learned sources" in the Amended Complaint (FAC ¶ 88.8), provide data security recommendations to financial institutions regarding the use of overseas third-party affiliates. These reports, entitled "Bank Use of Foreign-Based Third-Party Service Providers" and "Guidance for Financial Institutions on the Use of Foreign-Based Third-Party Service Providers," are attached as Exhibits A and B to the Declaration of Jessica Kaufman, dated Nov. 1, 2011.  *See Zhengxing v. USPTO*, 579 F. Supp. 2d 160, 166 (D.D.C. 2008) (federal agency guidance entitled to judicial notice so long as it is not in conflict with the statutes or regulations it interprets) (internal citations and quotation marks omitted). The OCC report describes the use of foreign-based customer service providers as "generally permissible." (Ex. A at A-1.)

against financial institutions in every such instance would expand the statute far beyond the "narrow scope of the entitlements" it creates by its terms. *O'Brien*, 467 U.S. at 745; *Cf. Wright v. Wachovia Bank, N.A.*, No. 08-99-GMS, 2011 U.S. Dist. LEXIS 73942, at *8-9 (D. Del. July 11, 2011) (dismissing pro se plaintiff's attempt to recast a state law negligence claim as an RFPA claim).

The forfeiture of rights under the Fourth Amendment and RFPA cannot constitute "invasion of a legally protected interest" that is concrete and not hypothetical where Plaintiffs cannot show they possess such rights.  Beneath this theory lies the kind of abstract concern that cannot support a "case or controversy" under Article III.  Thus, dismissal is warranted for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

### B. Plaintiffs Have Suffered No Other Concrete Injury in Fact Conferring Article III Standing.

The Complaint's illusory "forfeiture" theory cannot mask the absence of any "actual or imminent, not conjectural or hypothetical" injury to Plaintiffs.  Plaintiffs do not allege that the United States Government, or anyone else, has stolen, obtained, or otherwise accessed financial information related to their Bank of America accounts.  Nor do Plaintiffs allege that Bank of America has provided the United States Government, or anyone else, with their financial information.  Plaintiffs do not even allege that they themselves ever picked up the phone and spoke with a Bank of America associate in this or another country.  The Complaint offers nothing more than possibilities upon possibilities—that the Government *might* be intercepting every electronic communication that leaves United States borders, that in fact it or some other government *might* have somehow accessed Plaintiffs' bank records, that there *might* be some harm they have suffered as a result, and that Bank of America is somehow complicit in exposing Plaintiffs to this unidentified risk. But without more than the mere possibility that something has

10

happened to Plaintiffs or their financial information, all that remains is a generalized grievance with the presence of a person in India, Mexico, Costa Rica or the Philippines on the other end of the telephone.

To allege an injury in fact premised on a violation of the RFPA, Plaintiffs must allege that the government has *actually obtained their* customer financial information.  Plaintiffs cannot premise standing on a subjective belief that the Government has accessed their financial information.  Other attempts to do so have fallen short because, where plaintiffs "rely on their own belief that their financial information has been disclosed . . . such a belief, without more, cannot support standing."  *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 808 (E.D. Va. 2007) (*Id.* at 808-809, "[A] plaintiff's own assessment of injury in fact is insufficient to establish standing.") (citing *ACLU v. NSA*, 493 F.3d 644, 673-74 (6th Cir. 2007)).

Multiple courts have rejected RFPA claims for lack of standing where plaintiffs—as Plaintiffs do here—offer nothing more than subjective speculation that the Government obtained their financial information.  In *Walker* and *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, plaintiffs asserted RFPA and Fourth Amendment claims against a consortium of banks based on an article in the *New York Times* reporting on the existence of the Terrorist Financing Tracking Program, a post-9/11 initiative of the federal executive branch to track funds flowing to international terrorist organizations.  *Walker*, 517 F. Supp. 2d at 806; *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 607 F. Supp. 2d 500, 506 (S.D.N.Y. 2009).  The *Times* article reported that the consortium, in compliance with administrative subpoenas, had provided the Government with information concerning financial transmissions defendant had facilitated.  *See id*.

The *S.W.I.F.T.* plaintiffs failed to allege injury in fact because they never "made any showing that the government is now, or ever was, in possession of" their financial information.

*Amidax*, 607 F. Supp. 2d at 508; *see also Walker*, 517 F. Supp. 2d at 808-09 (dismissing RFPA claim in part because plaintiffs "fail[ed] to allege any facts giving rise to a plausible inference that plaintiffs' financial information was disclosed by [the financial institution]").  The *Times* article did not identify the specific financial information defendant disclosed, and the court rejected the plaintiffs' argument that general comments in a press conference and the *Times* article were sufficient to find that the financial services company provided, and the government obtained, the plaintiffs' financial information.  *Amidax*, 607 F. Supp. 2d at 506-07.[7]

Plaintiffs here offer even less than the *S.W.I.F.T.* plaintiffs:  they never even attempt to allege that any Bank of America gave any customer information to the United States Government, much less that their own financial information was accessed.  Further, they provide no factual support whatsoever, not even a news article like the one that fell short in *S.W.I.F.T.*, for the conclusory claim that government surveillance of electronically transmitted financial information is "pervasive."

Federal courts routinely reject claims of standing in the privacy context where, as here, plaintiffs offer nothing more than the "mere speculation that at some unspecified point in the indefinite future" an injury will occur, and cannot point to any concrete harm they have suffered.  *Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1, 8 (D.D.C. 2007).  In identity theft cases like *Randolph*, for example, claims based on data security breaches are dismissed for lack

---

[7] The same calculus applies where plaintiffs assert Fourth Amendment claims based on the *possibility* of government surveillance, but cannot say that the government ever actually intercepted communications in which they participated.  *ACLU*, 493 F.3d at 677.  In *ACLU*, it was undisputed that the NSA engaged in warrantless eavesdropping, but plaintiffs did not—and indeed could not, because of the State Secrets Doctrine—point to any evidence that any of their own communications had ever been intercepted by the NSA.  *Id*. at 653.  The court held that the plaintiffs did not have standing to challenge the National Security Administration's wiretapping program because "[t]he plaintiffs do not, and cannot, assert that any of their own communications have ever been intercepted."  *Id.* at 673-74.

of injury in fact when plaintiffs allege only an increased *risk* of identity theft and no actual

losses.  *See id.* at 7-8 (plaintiffs asserting gross negligence as a result of allegedly stolen financial

information failed to show injury in fact where they did not allege that they had actually suffered

from identity theft, or that they had suffered actual losses) (collecting cases); *Giordano v.*

*Wachovia Sec., LLC*, No. 06-476, 2006 U.S. Dist. LEXIS 52266, at *5 (D.N.J. July 31, 2006)

(same).

      The requirement of concrete injury is no different where plaintiffs frame the complained-

of conduct as a failure to provide notice that private information might be shared.   In the recent

*iPhone Application Litig.*, the court dismissed a group of privacy class actions that claimed that

Apple Inc. and other defendants allowed advertisers to track mobile device users' activity

without permission.  *See In re iPhone Application Litig.*, No. 11-MD-02250, 2011 U.S. Dist.

LEXIS 106865 (N.D. Cal. Sept. 20, 2011).  The *iPhone* plaintiffs could not show injury in fact

because they did not identify "which Defendant (if any) accessed or tracked their personal

information, . . . which apps they downloaded that access/track their personal information, . . .

[or] what harm (if any) resulted from the access or tracking of their personal information."  *Id.* at

*16.  The possibility of increased risk to plaintiffs in the future was insufficient to establish the

required injury.  *Id.* at *15-17.

      There is no difference between the "mere speculation" that fell short of injury in fact in

*Randolph*, *Giordano*, and the *iPhone* litigation and the unsupported belief Plaintiffs offer that

they have been injured because someone, somewhere may have accessed their data.   Like the

plaintiffs in these cases and the *S.W.I.F.T.* cases, Plaintiffs must offer more than an unsupported

belief that they have been injured to establish an injury in fact:  they must show that such an

injury is *actual* or *imminent*.  Unable to show an actual injury, Plaintiffs here posit only that *if*

Bank of America transmitted their records overseas, and *if* the government monitors Bank of America's transmissions, and *if* the government actually accessed Plaintiffs' records, the government might do so unconstrained by the Fourth Amendment and RFPA.  That is not enough.[8]

## II.    PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF UNDER THE RFPA.

If this Court looks beyond lack of subject matter jurisdiction, the case should also be dismissed in its entirety under Rule12(b)(6), because the Complaint fails to state any claim.  A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," alleging sufficient facts "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).  Mere recitals of the elements of a cause of action, with only conclusory allegations for support, do not suffice:  "the pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id*.  And to the extent that the complaint contains legal conclusions (with which this Complaint is rife), the Court need not accept them as true.  *Id.*

Plaintiffs' factual allegations must "state a claim to relief that is plausible on its face." *Id*. at 1940.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 1949.

---

[8] Neither is the requirement of an Article III injury in fact excused in an action for declaratory judgment.  *Edwards v. Carter*, 445 F. Supp. 1279, 1286 (D.D.C. 1978) (denying declaratory judgment action for lack of Article III standing where the alleged injury was "too speculative").

Plaintiffs' RFPA claims, Count 1 and 2, fail as a matter of law.  Plaintiffs' novel theory— that the RFPA can somehow be violated without any indication that a financial institution has given anything to the Government, or that the Government has obtained anything from the Bank—does not give rise to a claim under the RFPA.  As discussed above, the RFPA prohibits the United States Government from obtaining customer financial information without complying with certain procedures, and prohibits financial institutions from "releasing" such information to the Government unless the Government has followed those procedures.  Yet Plaintiffs do not offer a single allegation—whether conclusory or not—that the Government accessed financial information associated with their Bank of America accounts, or that Bank of America released that information to the Government.  Moreover, even if the Complaint alleged any such facts, the RFPA imposes no obligation on *financial institutions* to notify customers of access.

Plaintiffs do not offer a single, non-conclusory fact in support of a claim that Bank of America released, or any government accessed, any customer financial information (much less Plaintiffs' own) in violation of the RFPA.[9] *See Beam*, 2008 U.S. Dist. LEXIS 82491, at *21

---

[9] All of Plaintiffs' allegations concerning the alleged interception of financial information associated with Bank of America accounts—both their own and those of the putative class members—are made "on information and belief."  (See FAC at ¶¶ 60-64; 66-68.)  The *Twombly* plausibility standard does not prevent a plaintiff from pleading facts alleged "upon information and belief" where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible. *See Kvech v. Holder*, No. 10-cv-545, 2011 U.S. Dist. LEXIS 105541, at *9 (D.D.C. Sept. 19, 2011) (citing *Iqbal*, 129 S. Ct. at 1937).  Neither circumstance is present here.  First, Bank of America does not possess information about the covert surveillance activities of the United States or any other government, any more than Plaintiffs do, nor do Plaintiffs provide any factual basis for presuming otherwise.  Second, Plaintiffs' "belief" is based on no factual information whatsoever, let alone information that makes Bank of America's culpability more likely.  Allegations "upon information and belief" cannot be "a fanciful, paranoid, or irrational belief based on nothing more than the plaintiff's internal belief structure and still be sufficient to subject a defendant . . . to the costs and burdens of litigation."  *Tooley v. Napolitano*, 556 F.3d 836, 843 (D.C. Cir. 2009).  To the extent that Plaintiffs plead their claims "on information and belief," the Court should regard all such allegations as conclusory under *Iqbal* and *Twombly*.

("Plaintiffs' conclusory statement that [defendants] violated the RFPA does not by itself satisfy the pleading standards") (citing *Twombly*, 127 S. Ct. at 1966).  For this reason alone, Plaintiffs' RFPA claim should fail.

But even assuming the Complaint's highly speculative, conclusory allegations suggesting "pervasive" government surveillance were more than "labels and conclusions" insufficient under *Twombly*, Plaintiffs could not state a claim under § 3403 of the RFPA because none of their allegations supports a reasonable inference that Bank of America released customer financial records to a United States Government authority.

Section 3403 controls the "release of records by financial institutions" and provides that "no financial institution, or officer, employees, or agent of a financial institution, may provide to any Government authority access to or copies of, or the information contained in, the financial records of any customer except in accordance with the provisions of this chapter."  12 U.S.C. § 3403(a).[10]  Plaintiffs merely allege (all on "information and belief") that some arm of the United States Government or a foreign government[11] "intercepts" (FAC ¶ 60), "collects" (FAC ¶ 60), "searches" (FAC ¶ 62, 64, 66) or "seizes" (FAC ¶ 61, 63, 66-67) "all" or "substantially all" electronic transmissions containing customer financial information, or that such information is "at risk of being searched" (FAC ¶ 63-65).   Nowhere do Plaintiffs allege that Bank of America

---

[10] In *Puerta v. United States*, 121 F.3d 1338, 1341 (9th Cir. 1997), the Ninth Circuit described the operation of § 3403 in plain terms: "if a government authority asks a bank for access to or copies of information contained in the financial records of a customer, the bank may not release the financial records unless the government agent asking for them provides a written certificate of compliance."  Nowhere is this straightforward statutory scheme described in the Complaint.

[11] The RFPA only imposes limitations on the federal government of the United States; it does not in any way apply to the acts of foreign governments.  *See, e.g., Young v. U.S. Dep't of Justice*, 882 F.2d 633, 637-38 (2d Cir.1989) (finding that "Congress left untouched" the ability of foreign governments to obtain financial information via requests made to financial institutions by a United States attorney on behalf of the foreign government).

*gave* financial records associated with their account to a United States Government authority—or took any action at all with respect to these records—or that the Government actually obtained their financial information.  *Cf. Gyamfi v. Wells Fargo-Wachovia Bank*, No. 09-CV-3001, 2010 U.S. Dist. LEXIS 131870, at *11 (D. Md. Dec. 14, 2010) (no basis for liability under the RFPA based on seizure of funds where plaintiff did not establish that defendant disclosed a financial record within the meaning of the statute).

As discussed in Section I.A., *supra*, an interpretation of § 3403 that encompasses situations where the financial institution has not affirmatively conveyed customer financial information to the Government contradicts the plain language of the statute.  *See Chao*, 474 F.3d at 83 (interpreting definition of "customer" under the RFPA according to plain language and holding that "even though we may agree that, under the RFPA, it is the [trust beneficiaries] who should be protected, we cannot reshape clear statutory language"); *Toader v. J.P. Morgan Chase Bank, N.A.*, No. 09 C 6684, 2011 U.S. Dist. LEXIS 95342, at *9 n.6 (N.D. Ill. Aug. 23, 2011) (rejecting statutory interpretation that "[found] no support in the RFPA's unambiguous plain language or in any case law cited by plaintiff or identified by the court"); *see also Chao*, 474 F.3d at 83 ("[T]he Supreme Court has made clear that [the] RFPA is to be narrowly construed"). Because Plaintiffs do not plead "factual content that allows the court to draw a reasonable inference that" Bank of America "released" or "provided" customer financial records to the United States Government within the meaning of § 3403, Plaintiffs cannot state a plausible RFPA claim against Bank of America under *Twombly* and *Iqbal*.

Plaintiffs' additional claim appears to be that Bank of America should have given customers notice that it "provides" customer financial records to the government by virtue of the Bank's outsourcing policies.  But the notice requirements under the RFPA impose an obligation

17

on the *government*, not the financial institutions, to notify the customer that a records request has been made.  *See Flowers v. First Hawaiian Bank*, 295 F.3d 966, 970 n.1 (9th Cir. 2002) ("[plaintiffs'] complaint erroneously suggests that the Bank was charged with providing them with a notice of the subpoena that included a statement of the rights the [plaintiffs] enjoyed under the RFPA. That is incorrect. The responsibility for providing such a notice rests with the requesting government authority").  The RFPA imposes no notice requirement on financial institutions.

In sum, Plaintiffs' RFPA claims fail as a matter of law because the Complaint does not raise a "reasonable inference" that Bank of America could be liable under the statute.  Even if the Court were to take Plaintiffs' far-fetched allegations "on information and belief" as true, Plaintiffs allege no facts suggesting that Bank of America ever actually released financial information associated with Plaintiffs' accounts to the Government, or that the Government obtained this information from Bank of America.  Nor can Plaintiffs enforce a notice obligation against Bank of America that the statute simply does not impose.  Because the Complaint fails to offer any facts that even remotely describe the elements of an RFPA violation, Plaintiffs' RFPA claims should be dismissed with prejudice.

<u>**CONCLUSION**</u>

Not only do Plaintiffs lack Article III standing to assert their claims, but all of Plaintiffs' claims "stop[] short of the line between possibility and plausibility[,]" *see Twombly*, 550 U.S. at 557.  Accordingly, Bank of America respectfully requests that its motion to dismiss be granted, without leave to replead, for lack of subject matter jurisdiction and failure to state a claim.

18

November 1, 2011                  MORRISON & FOERSTER LLP

                                 /s/ Michael V. Sachdev

                                 Michael V. Sachdev (D.C. Bar No. 979102)
                                 2000 Pennsylvania Avenue, N.W.
                                 Washington, D.C. 20006-1888
                                 Tel:  (202) 887-1500
                                 Fax: (202) 887-0763
                                 Email:  msachdev@mofo.com

                                 Mark P. Ladner (*Pro hac vice*)
                                 Michael B. Miller (*Pro hac vice*)
                                 Jessica L. Kaufman (*Pro hac vice*)
                                 1290 Avenue of the Americas
                                 New York, NY 10104-0050
                                 Tel:  (212) 468-8000
                                 Fax:  (212) 468-7900
                                 Email:  mladner@mofo.com
                                 Email:  mbmiller@mofo.com
                                 Email:  jkaufman@mofo.com

                                 *Attorneys for Defendants Bank of America, N.A.,*
                                 *FIA Card Services, N.A., MBNA Technology, Inc.,*
                                 *BA Continuum India Pvt. Ltd., BA Continuum*
                                 *Private Limited, BA Continuum Philippines, Inc.,*
                                 *BA Continuum Costa Rica, Ltda. and BA*
                                 *Continuum Mexico, S.C.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JEFFREY STEIN, et al., | |
| Plaintiffs, | |
| v. | No. 1:11-cv-01400 (RBW) |
| BANK OF AMERICA CORPORATION, et al., | |
| Defendants. | |

**CERTIFICATE OF SERVICE**

I hereby certify that on November 1, 2011, I provided, via ECF, the attached (1) DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, (2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT, and (3) DECLARATION OF JESSICA KAUFMAN, with EXHIBITS to the following attorneys of record:

Joseph A. Hennessey
Beins, Goldberg & Hennessey, LLP
2 Wisconsin Circle, Suite 700
Chevy Chase, MD 20185

Anne Toomey McKenna, Esq.
Toomey McKenna Law Group, LLC
8 Montrose Avenue
Baltimore, MD 21228

*Attorneys for Plaintiffs*

/s/ Michael V. Sachdev

Michael V. Sachdev (D.C. Bar No. 979102)
MORRISON & FOERSTER LLP
2000 Pennsylvania Ave., NW, Suite 6000
Washington, D.C. 20006-1888
Telephone: 202.887.1500
Email: msachdev@mofo.com